The document below is hereby signed.

Dated: July 18, 2011.



S. Martin Teel, Jr.
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                          )
                               )      Case No. 09-00414
STEPHEN THOMAS YELVERTON,      )      (Chapter 7)
                               )
          Debtor.              )      **Not for Publication in**
                               )      **West's Bankruptcy Reporter**
                               )

MEMORANDUM DECISION DENYING JOINT MOTION TO
<u>VACATE DISCHARGE ORDER TO APPROVE REAFFIRMATION AGREEMENT</u>

The debtor has filed with the court a Joint Motion to Vacate
Discharge Order to Approve Reaffirmation Agreement (Dkt. No. 396,
filed May 31, 2011).  For the reasons that follow, I will deny
the motion.

I

On May 14, 2009, the debtor commenced the above-captioned
case under chapter 11 of the Bankruptcy Code.  On August 10,
2009, Melody Fennel commenced an adversary proceeding (Adv. Proc.
No. 09-10021) seeking a determination that a debt the debtor owed
to her was nondischargeable under § 523(a)(2) of the Bankruptcy
Code.  On August 20, 2010, the debtor's bankruptcy case was
converted to a case under chapter 7, and on December 3, 2010, the

debtor received his discharge.

The debtor has now filed with the court a joint motion to
vacate the discharge order and to approve a reaffirmation
agreement with Fennel as a means of resolving the adversary
proceeding.  Upon the court's approval of the reaffirmation
agreement and the passing of the 60-day rescission period under
§ 524(c), Fennel would then dismiss the nondischargeability
adversary proceeding with prejudice.  The parties move to vacate
the dismissal under Rule 60(b)(6) of the Federal Rules of Civil
Procedure (incorporated in bankruptcy by Federal Rule of
Bankruptcy Procedure 9024).


                               II

Rule 60(b)(6) provides that a court may grant relief from a
final judgment or order for "any other reason that justifies
relief."  Importantly, however, Rule 60(b)(6) "should be only
sparingly used and may not be employed simply to rescue a
litigant from strategic choices that later turn out to be
improvident." *Salazar v. District of Columbia*, 633 F.3d 1110,
1120 (D.C. Cir. 2011).  Thus, a Rule 60(b)(6) motion requires a
party to "show extraordinary circumstances justifying the
reopening of a final judgment." *Id*. at 1121.  Extraordinary
circumstances include "when a party timely presents a previously
undisclosed fact so central to the litigation that it shows the

initial judgment to have been manifestly unjust." *Id.* (quoting *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 574 (D.D.C. 1980)). But, in determining if extraordinary circumstances are present, "a litigant's diligence in pursuing review of a decision . . . is relevant." *Id.* at 1118-19 (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 537 (2005)). Therefore, "a 'lack of diligence' effectively precludes a finding of 'extraordinary circumstance.'" *Id.* at 1121.

In the joint motion, the parties contend that relief from the discharge order is appropriate because "This agreement could not have been entered into prior to the Discharge order on December 3, 2010. The Pre-Trial Statements in the Adversary Proceeding were not due to be filed until March 1, 2011. Only until these statements were filed could the parties realistically assess the evidence, and then determine their course of action." Motion ¶ 2. The parties further note that "approval of the Reaffirmation Agreement would not prejudice the parties to the Bankruptcy proceeding. None of the other creditors have sought non-dischargeability or reaffirmation of any debts. The Reaffirmation Agreement would not impose an undue hardship on the Debtor, nor would interfere with his 'fresh start' after Bankruptcy, but would enhance it . . . ." Motion ¶ 3.

In support of the motion, the parties cite to cases from two courts that "have employed [Rule 60(b)(6)] to vacate discharge

orders to allow a Chapter 7 debtor to enter into an enforceable reaffirmation agreement." Motion ¶ 1. Neither case, however, stands for this proposition.

The first case, *Disch v. Rasmussen*, 417 F.3d 769 (7th Cir. 2005), does not address whether a court can properly vacate a discharge order to approve a reaffirmation agreement. Rather, *Disch* only addresses the limited issue of whether a court can vacate a discharge order to allow a creditor to seek a denial of discharge under § 727 after the clerk had mistakenly entered the discharge. *Id.* at 779. Nothing in the case addresses the issue of vacating the discharge order when there has been no showing of mistake or inadvertence and the debtor is just seeking to have the court approve a reaffirmation agreement.

The second case cited by the parties, *In re Solomon*, 15 B.R. 105 (Bankr. E.D. Pa. 1981), although more on point, fails to address whether parties can properly use Rule 60 as a vehicle to have the court approve a reaffirmation agreement after the debtor has received a discharge. In *Solomon*, the debtors filed a reaffirmation agreement three days after they had received their discharge. *Id.* at 106. There, with little explanation as to its rationale and without relying on Rule 60, the Court vacated the discharge:

> However, the debtors raise several reasons why their
> reaffirmation agreement should be approved. The
> agreement is in settlement of litigation with a secured
> creditor and is, the debtors assert, in their best

4

> interest.   Further, the litigation between the debtors
> and the creditor was started a little more than a month
> before the discharge hearing and was not settled before
> that hearing.   As a result, we conclude that there are
> sufficient equities in the instant case for us to vacate
> our prior order granting the debtor's discharge and to
> reschedule the § 524(d) hearing.

*Id.* Without more, this case has little persuasive value.

The court's research on cases supporting the parties'

position has turned up a handful of cases on point, which show

that courts are split as to whether it is within their authority

to vacate a discharge order for approval of a reaffirmation

agreement.

In *In re Long*, 22 B.R. 152 (Bankr. D. Me. 1982), the court,

relying on a liberal construction of Rule 60, vacated a discharge

order to allow a debtor to enter into a reaffirmation agreement:

> A bankruptcy court has the powers of a court of
> equity.   28 U.S.C. § 1481.   An equity court's power to
> vacate an order is inherent in its jurisdiction and
> explicitly defined in Fed. R. Civ. P. 60.   *In re Burley*,
> 11 B.R. 369, 373 (Bankr. C.D. Cal. 1980).   Fed R. Civ. P.
> 60(b) provides for relief from a final judgment, order,
> or proceeding for "any . . . reason justifying relief
> from the operation of the judgment."   The Supreme Court
> has liberally construed that provision:
>
> > Furthermore 60(b) strongly indicates on
> > its face that courts no longer are to be
> > hemmed in by the uncertain boundaries of . . .
> > common law remedial tools.   In simple English,
> > the language of the "other reasons" clause,
> > for all reasons except the five particularly
> > specified (in Rule 60(b)), vests power in
> > courts adequate to enable them to vacate
> > judgments whenever such action is appropriate
> > to accomplish justice.
>
> *Klapprott v. United States*, 335 U.S. 601, 614-15 (1948).
> Here, no party objects to debtors' motions, and
> debtors' counsel has represented that both mortgagees are

> willing to permit reaffirmation. The reaffirmation
> agreements pertain to the debtors' residence, and
> therefore, are of the utmost importance in securing the
> "fresh start" contemplated by the Bankruptcy Code. The
> court has examined the proposed agreements, and finds
> they impose no undue hardship and are in the best
> interest of the debtors. The protections afforded the
> debtors by section 524 will not be lost by vacating the
> discharge because, after reaffirming, the debtors will be
> required to attend another discharge hearing at which the
> court will explain to them their rights and obligations,
> and after which they will have 30 days to rescind the
> agreement.

*Id.* at 154. Importantly, however, the court noted that it "does not intend to routinely grant such orders. Counsels' attention is directed to Local Rule 4002, providing for deferral of the entry of an order granting discharge upon request. That rule is intended in part to provide additional time for execution of reaffirmation agreements. Judicious use of that rule by debtors' counsel largely should obviate the need for future motions to vacate a discharge." *Id.*

Similarly, in *In re Edwards*, 236 B.R. 124 (Bankr. D.N.H. 1999), the court also found that it had the authority under Rule 60(b) to vacate a discharge order for approval of a reaffirmation agreement, and adopted a two-factor standard for when it would be appropriate to do so: "(1) consideration of relative prejudice to the parties; and (2) the degree of the debtor's culpability in allowing the [discharge] order to be entered." *Id*. at 127-28. The court found that both factors weighed in favor of granting the debtor's request to vacate the discharge:

6

Vacating the Debtor's discharge would result in no
prejudice to the Bank, but not doing so would seriously
prejudice the Debtor.   Both the Debtor and the Bank
desire to enter into an enforceable reaffirmation
agreement and thus both would prefer that the Debtor's
discharge be vacated in order that they may enter into
such an agreement.   The reaffirmation agreement concerns
the residence, an asset that is very important to the
Debtor's fresh start.

     . . . In addition, it does not appear that the
Debtor was at fault in allowing the discharge order to be
entered before the execution of a reaffirmation
agreement.   Despite the diligent efforts of the Debtor
and his counsel, a problem arose due to the
unavailability of the Bank's counsel, a circumstance
beyond the Debtor's control.   Thus, the two relevant
factors tip very strongly in favor of the Debtor and
warrant the vacating of his discharge order for the
purpose of allowing him to enter into an enforceable
reaffirmation agreement.

*Id.* at 128 (citations omitted).   However, like the court in *Long*,

the court warned that its decision to vacate the discharge was

"based upon the compelling facts of the instant case," and that

it "will not ordinarily vacate discharge orders for the purpose

of allowing enforceable reaffirmation agreements." *Id*.   The

court also noted that the availability of Fed. R. Bankr. P.

4004(c)(2), which allows the debtor to defer the entry of a

discharge, "should preclude the need for vacating discharge

orders to allow enforceable reaffirmation agreements in all but

the most exceptional cases." *Id*.

     Cutting the other way, in *In re Engles*, 384 B.R. 593 (Bankr.

N.D. Okla. 2008), the court explicitly rejected the reasoning in

*Long* and *Edwards* that a court may use Rule 60(b) to vacate a

discharge order for approval of a reaffirmation agreement.   The

7

*Engles* court reasoned that its authority to grant relief pursuant

to Rule 60(b) is limited by the provisions of the Bankruptcy

Code, and vacating a discharge at the request of the debtor

"would bestow upon Debtor standing that he does not have under

the Bankruptcy Code":

> The holdings of these cases, rooted in notions of equity,
> overstep the authority granted to bankruptcy courts by
> Congress.
>     . . . The United States Supreme Court has let it be
> known that "whatever equitable powers remain in the
> bankruptcy courts must and can only be exercised within
> the confines of the Bankruptcy Code."
>     . . . Sections 727(d) and (e) preclude debtors from
> seeking revocation of their discharge.  The Court is
> bound to enforce these provisions according to their
> terms.  While the application of these provisions may
> produce harsh results for debtors, it is the prerogative
> of Congress to change the Bankruptcy Code, not the
> courts.

*Id.* at 598 (citations omitted) (quoting *In re Nelson*, 02-05356-M

(Bankr. N.D. Okla. Aug. 27, 2003)).

Likewise, in *In re Rigal*, 254 B.R. 145 (Bankr. S.D. Tex.

2000), a Texas Bankruptcy court also concluded that it did not

have authority to vacate the discharge for approval of a

reaffirmation agreement.  It cited two reasons for its

conclusion: "(i) there simply is no express statutory authority

for the relief that the Debtors and Fleet seek, and (ii) exercise

of any such authority would conflict with the express statutory

scheme and with the provisions of the Federal Rules of Bankruptcy

Procedure that govern reaffirmation agreements." *Id.* at 148.  As

to the second reason, the court found that it could not enforce a

8

reaffirmation agreement made post-discharge because such an agreement directly conflicts with § 524(c), which mandates that a reaffirmation agreement is enforceable "only if" it is made prior to entry of the discharge. *Id.* The court emphasized the importance of compliance with § 524: "[T]hese provisions are meaningless if there is the simple expedient of vacating the discharge order and reentering it to allow a Debtor to enter into a reaffirmation agreement." *Id.* It noted that the absence of an enforceable reaffirmation agreement does not leave a debtor without options: "[T]here is no prohibition on the Debtor paying, and Fleet accepting, payments on the underlying mortgage debt . . . § 524(e) clearly allows the Debtor to voluntarily pay any discharged debt." *Id.* at 149.

I am inclined to view *In re Engles* and *In re Rigal* as the better reasoned decisions. Here, however, the court need not decide whether it has the authority to vacate a discharge order to approve a post-discharge reaffirmation agreement because even if I were to find the court had the authority under Rule 60(b) to vacate the discharge, the parties have failed to show that they are entitled to the relief requested.

Under the two-factor analysis laid out in *Edwards*, the debtor has not shown that either factor weighs in his favor. First, he has not shown that the court's denial of relief from the discharge order would "seriously prejudice" him. He does not

9

claim that the agreement is "of the utmost importance in securing the 'fresh start' contemplated by the Bankruptcy Code," he only claims that it would "enhance" his fresh start. Further, unlike in *Long* and *Edwards*, it is not obvious that the agreement would be vital to his fresh start because it does not pertain to the debtor's primary residence or any other important collateral – it only pertains to the repayment of a personal loan. Finally, failure to enter into an enforceable reaffirmation agreement does not leave the debtor without other options: it does not preclude the debtor from making voluntary payments to the creditor, or from fulfilling any of the other terms of the proposed reaffirmation agreement such as the naming of the creditor on the debtor's life insurance policy. The debtor can consent to entry of a judgment in the pending adversary proceeding, taking into account the costs and risks of litigation in arriving at a judgment amount, and the parties are free to enter into an agreement as to how that judgment will be paid, including an enforceable agreement regarding naming the creditor on the debtor's life insurance policy.

Second, entry of the discharge before filing of the reaffirmation agreement did not occur "despite the debtor's diligent efforts" or "due to . . . a circumstance beyond the debtor's control." The debtor claims that the reaffirmation agreement could not have been entered into prior to his discharge

because pre-trial statements were not due until March 1, 2011, and "[o]nly until these statements were filed could the parties realistically assess the evidence, and then determine their course of action." However, this adversary proceeding was instituted on August 8, 2009, more than a year before the discharge order was entered on December 3, 2010, giving the debtor ample time to consider the effects of a discharge on his ability to enter into an enforceable reaffirmation agreement. Further, the debtor made no attempt to defer the entry of discharge pursuant to Fed. R. Bankr. P. 4002(c)(2), but waited six months after the entry of the discharge order to file this motion for relief. The debtors in *Solomon*, in contrast, filed their reaffirmation agreement with the court only three days after entry of the discharge. Thus, the debtor has not shown that non-enforcement will seriously prejudice him, nor has he shown that his failure to enter into a reaffirmation agreement before entry of the discharge was in spite of his efforts or beyond his control.

For the foregoing reasons, I will deny the request for relief from the discharge order for approval of the reaffirmation agreement.

A separate order follows.

[Signed and dated above.]

Copies to: Debtor; Debtor's attorney; Office of United States Trustee.