The document below is hereby signed.

Dated: August 8, 2012.



_____
**S. Martin Teel, Jr.**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

```
In re                        )
                             )
STEPHEN THOMAS YELVERTON,    )    Case No. 09-00414
                             )    (Chapter 7)
             Debtor.         )    For publication in West's
                             )    Bankruptcy Reporter.
```

MEMORANDUM DECISION RE DEBTOR'S
MOTION TO VACATE ORDER APPROVING SETTLEMENT

The debtor has filed a *Motion to Vacate Order and for New Trial As to Trustee's Settlement*.  The motion seeks to set aside this court's approval of a settlement that the chapter 7 trustee reached with certain entities ("the Defendants") with whom the debtor (and then the trustee in place of the debtor) had been engaged in litigation concerning the debtor's shares in Yelverton Farms, Ltd. and other claims.  The motion will be denied for the following reasons.

I

Among other things, the settlement called for the trustee to endorse in blank his shares in Yelverton Farms, Ltd. and transfer possession of such shares to the Defendants.  The debtor argues that the settlement cannot be approved because his ex-wife,

Alexandra N. Senyi de Nagy-Unyom, has an ownership interest in
those shares pursuant to her statutory right of equitable
distribution under D.C. Code § 16-910 in a divorce proceeding
between the debtor and her that was commenced before the filing
of the debtor's bankruptcy petition.  The Superior Court for the
District of Columbia issued a judgment of divorce postpetition,
but has not yet entered a § 16-910 decree.  D.C. Code § 16-910,
provides in relevant part:

> **upon entry of a final decree of . . . divorce, . . . and
> the filing of a petition for relief available under this
> section**, in the absence of a valid antenuptial or
> postnuptial agreement resolving all issues related to the
> property of the parties, the court shall:
>
> (a) assign to each party his or her sole and
> separate property **acquired prior to the marriage** . . .
> his or her sole and separate property acquired during the
> marriage . . . by gift, bequest, devise, or descent, and
> any increase thereof, or property acquired in exchange
> therefor; and
>
> (b) value and distribute all other property and
> debts accumulated during the marriage . . . that has not
> been addressed in a valid antenuptial or postnuptial
> agreement, or decree of legal separation, regardless of
> whether title is held individually or by the parties in
> the form of joint tenancy or tenancy by the entireties,
> in a manner that is equitable, just, and reasonable,
> after considering all relevant factors,  including, but
> not limited to:
>
> [Twelve enumerated factors omitted.]

[Emphasis added.]

A

In his opposition to the motion to approve the settlement,
however, the debtor merely characterized Senyi as having
**nondischargeable** statutory spousal rights.  Opposn. to Trustee's

Mtn. (Dkt. No. 464) 2, 14. Nondischargeability is a concept
addressed to a creditor's being barred from collecting a monetary
claim against the debtor as a personal liability of the debtor,
not to issues of ownership of property. Similarly, Senyi only
asserted, by way of her proof of claim, a right to payment from
the estate with respect to the debtor's interest in Yelverton
Farms, Ltd., and never filed a proceeding to assert an ownership
interest in those shares.

To elaborate, a discharge under 11 U.S.C. § 727(a)
discharges the debtor from debts that arose prepetition, 11
U.S.C. § 727(b), and gives rise to a discharge injunction under
11 U.S.C. § 524(a)(2) barring collection of the debt as a
personal liability of the debtor unless the debt is excepted from
discharge under 11 U.S.C. § 523 or the debt is reaffirmed under
11 U.S.C. § 524(c). A debt is a liability on a claim, and, in
turn, a claim is a right to payment, or a "right to an equitable
remedy for breach of performance if such breach gives rise to a
right to payment . . . ." 11 U.S.C. § 101(5). A creditor
(which, under 11 U.S.C. § 101(10), includes an entity holding a
claim in existence on the bankruptcy petition date) may assert
the creditor's claim by filing a proof of claim against the
estate. 11 U.S.C. § 501(a).

Filing a proof of claim is what Senyi did with respect to
the debtor's stock ownership in Yelverton Farms, Ltd. That

3

entity owned a pig farm operation in North Carolina.  Senyi

filed a proof of claim that included a claim described as

follows:

> CLAIM DETAILS: 100,000$ FROM THE SALE OF THE YELVERTON
> PIG FARM OPERATION IN NORTH CAROLINA
> Mr. Yelverton signed a notarized document on April 2,
> 2008, wherein he promised the first $100,000 in
> proceeds from the North Carolina Pig Farm Operation, to
> his wife Alexandra N. Senyi de Nagy-Unyom.  The pig
> farm has not yet been sold, to the knowledge of Ms.
> Senyi.

The proof of claim attached the April 2, 2008 document in which

Yelverton stated:

> I, Stephen Thomas Yelverton, agree to give my wife,
> Alexandra-Nicole Senyi de Nagy-Unyom, the first $100,000
> in proceeds that I receive from the sale of my interest
> in my family's pig operation in North Carolina.

The debtor would have realized proceeds from the sale of his

interest in the pig farm operation via a sale of his stock

ownership in Yelverton Farms, Ltd.  Accordingly, Senyi's proof of

claim was asserting a right to payment as a creditor with respect

4

to the promissory note of April 2, 2008,[1] relating to the
debtor's rights as a shareholder in Yelverton Farms, Ltd.  That a
claim by Senyi against the estate based on spousal rights arising
under D.C. Code § 16-910 might (as contended by the debtor) be
nondischargeable and unaffected by a discharge would have no
impact on the liquidation of the estate, and would not affect
whether the settlement ought to have been approved.

Senyi and the debtor never clearly articulated an argument
that Senyi had an ownership interest in the debtor's shares in
Yelverton Farms, Ltd.  After the court has already held a lengthy
hearing to consider approval of the settlement agreement, and
issued a decision approving the settlement at the conclusion of
that hearing, it is too late for the debtor to inject a new issue
into the proceeding.

B

In any event, any assertion that Senyi would eventually be

---

[1]  The debtor himself characterized the April 2, 2008
document as a promissory note, see his objection to Senyi's claim
(Dkt. No. 111).  So has Senyi.  See her response to the objection
(Dkt. No. 122) stating:

Claimant Senyi refutes the allegation that the promissory
note was signed under duress on April 2, 2008.  In
addition, Claimant Senyi refutes that the amount was
previously paid to Ms. Senyi in February of 2008.  Had
the amount been paid, then why would the Debtor and
Claimant sign a promissory note later on.

Senyi has not asserted that the April 2, 2008 document effected a
transfer to her of an ownership interest in Yelverton's shares in
Yelverton Farms, Ltd.

entitled to an ownership interest in his Yelverton Farms, Ltd.
shares is plainly in error.

First, the 2008 promissory note did not confer an ownership
interest in Senyi. Indeed, in seeking to set aside the order
approving the settlement, the debtor has not contended that his
promise in 2008 "to give my wife . . . the first $100,000 in
proceeds **that I receive** from the sale of my interest in my
family's pig operation in North Carolina" (emphasis added)
conveyed an ownership interest in the debtor's shares in
Yelverton Farms, Ltd. to Senyi. Under 11 U.S.C. § 726, the
trustee must first distribute the proceeds of the shares in
Yelverton Farms, Ltd. towards payment of administrative claims
and creditors' claims before the debtor will be entitled to
receive any of the proceeds. There will be inadequate funds to
pay such claims in full. Accordingly, the promise to give Senyi
the first $100,000 in proceeds "that I receive" will be
ineffective.

Second, because the debtor has acknowledged in hearings
before this court that he acquired his shares in Yelverton Farms,
Ltd. prior to his marriage to Senyi, he will be unable to show
that Senyi would be entitled pursuant to D.C. Code § 16-910 to an
ownership interest in the shares. The debtor specifically
contends that "[u]nder D.C. Code, Section 16-910, Senyi would
have 50% ownership of the 1333 shares of stock that are owned by

Debtor Yelverton in Yelverton Farms, Ltd."

The debtor's shares in Yelverton Farms, Ltd. would be assigned to him under § 16-910(a) if the shares were his "sole and separate property acquired prior to the marriage." Indeed, the spouses' prenuptial agreement expressly provided that "[p]ersonal items acquired before the marriage shall remain the property of the person who acquired them."[2] The debtor has not articulated any reason for believing that the Superior Court would be authorized under § 16-910 to make an award of the shares to Senyi.

C

If the debtor *had* opposed the proposed settlement by arguing that under § 16-910, or under the 2008 promissory note, Senyi could be viewed as having an ownership interest with the debtor in the debtor's shares in Yelverton Farms, Ltd. the settlement was effectively a sale to the Defendants of the debtor's shares in Yelverton Farms, Ltd. (and of Yelverton's claims against the Defendants), including a sale of whatever potential rights, if any, that Senyi held in those shares by reason of her inchoate

---

[2] Moreover, as discussed later, the trustee could argue that Senyi would have no ownership interest in the debtor's property pursuant to § 16-910 until an equitable distribution decree is entered, and that the shares (as titled in the debtor's name) would remain subject to execution by a judgment creditor until then, thus making any eventual § 16-910 award of the shares to Senyi ineffective against the trustee, who, under 11 U.S.C. § 544, has the rights of a hypothetical judgment lien creditor on the bankruptcy petition date.

rights under D.C. Code § 16-910.  In effect, if pending a
issuance of a § 16-910 decree, § 16-910 could be viewed as giving
the spouses joint ownership of the debtor's shares in Yelverton
Farms, Ltd., then until entry of such a decree the spouses would
be tenants in common or joint tenants with respect to ownership
of the shares.  Under 11 U.S.C. § 363(h), the court could sell
the shares as tenants in common property.  Treating the
settlement as a sale of the Yelverton Farms, Ltd. shares, the
criteria of § 363(h) for such a sale were satisfied here.

D

Under 11 U.S.C. § 544, the trustee has the status of a
hypothetical judgment lien creditor as of the petition date.  If
the filing of the divorce proceeding acted as notice to a
judgment lien creditor of *lis pendens* regarding Senyi's potential
§ 16-910 rights, and, in turn, that *lis pendens* notice resulted
in any judgment lien as of the bankruptcy petition date being
subject to the eventual § 16-910 decree, that might affect the
trustee's § 544 rights.  *See Webster v. Hope (In re Hope)*, 231
B.R. 403, 424 (Bankr. D.D.C. 1999) (addressing *lis pendens* effect
of a divorce proceeding with respect to real property).  The
divorce action, however, did *not* act as a *lis pendens* notice with
respect to a judgment lien creditor, executing on the debtor's
Yelverton Farms, Ltd. shares, without notice of the pending
divorce proceeding.

8

The common law doctrine of *lis pendens* arose with respect to real property. *See Anderson v. Reid*, 14 App. D.C. 54 (D.C. Cir. 1899); *Wilkinson v. District of Columbia*, 22 App. D.C. 289 (D.C. Cir. 1903). The District of Columbia common law doctrine of *lis pendens* constructive notice was applied only to actions involving real property. *See Trustee 1245 13th St., NW # 608 Trust v. Anderson*, 905 A.2d 181, 184 (D.C. 2006) ("the common law doctrine of lis pendens . . . prevents change in the status of real property during the pendency of litigation"); *1st Atl. Guar. Corp. v. Tillerson*, 916 A.2d 153, 156 (D.C. 2007) (common law doctrine "has the legal effect of providing constructive notice of pending litigation involving real property interests").

Even if there were doubt as to the reach of the common law doctrine, the legislature has implicitly abrogated the reach of the doctrine to personal property. The legislature abolished the common law doctrine of *lis pendens* as to real property by enacting D.C. Code § 42-1207(a) (2001) (with amendments, D.C. Code § 42-1207 (2010)), which provides a statutory *lis pendens* procedure requiring recording of notice for *lis pendens* to apply as to real property. *See Bank of Am., N.A. v. Griffin*, 2 A.3d

1070, 1073 (D.C. 2010).[3]  It is thus not surprising that, as before enactment of § 42-1207, *lis pendens* by mere pendency of a lawsuit without actual notice has been viewed as applicable only if the action concerns title to real property.  *See Banks v. E. Sav. Bank*, 8 A.3d 1239, 1243-44 (D.C. 2010) (holding that a tenancy at will qualified as an interest in real property such that Superior Court erred in canceling a notice of *lis pendens* under D.C. Code § 42-1207(a) (2001), and implicitly holding that if the tenancy at will was *not* an interest in real property, *lis pendens* would not apply); *McNair Builders, Inc. v. 1629 16th St., L.L.C.*, 968 A.2d 505, 507-508 (D.C. 2009); *Heck v. Adamson*, 941 A.2d 1028, 1031 n.4 (D.C. 2008).  It stands to reason that if recorded notice is required for *lis pendens* to apply to real property, the legislature would have required some form of recorded notice for *lis pendens* to apply to lawsuits involving personal property, and that the legislature has totally displaced the common law doctrine of *lis pendens*.

This implicit abrogation of the common law doctrine of *lis pendens* as to all property is underscored by D.C. Code § 42-1207(f), which provides that the notice provisions of

---

[3]  Even if the common law doctrine still applied as to real property, the inapplicability of *lis pendens* as to the debtor's shares in Yelverton Farms, Ltd. is not altered by reason of any real property interest that Yelverton Farms, Ltd. might own, as the debtor's ownership of shares in the corporation is not an ownership of the corporate property.  *See 5303 Realty Corp. v. O & Y Equity Corp.*, 476 N.E.2d 276, 278 (N.Y. 1984).

§ 42-1207(a) and (b) "shall not be construed to apply where the
title to or interest in the real property affected by the notice
is not directly at issue in the underlying action or proceeding."
It would be peculiar for a lawsuit to have *lis pendens* effect
only via recording of notice when title to real property is
*directly* affected by the lawsuit but for a lawsuit to have *lis
pendens* effect without any recorded notice when title to real
property is *indirectly* affected by the lawsuit.  It may be
inferred that the legislature intended that *lis pendens* via
constructive notice (the common law doctrine) not apply as to
real property that is only indirectly affected by the lawsuit.
Similarly, it may be inferred that the legislature intended that
*lis pendens* via constructive notice not apply to personal
property.  In conclusion, the mere pendency of the divorce action
does not act as a *lis pendens* notice regarding Senyi's eventual
rights under a § 16-910 decree.

E

Nevertheless, a judgment lien would only reach whatever
property the debtor owned upon the trustee's hypothetically
executing on a judgment on the bankruptcy petition date.  Until
the Superior Court enters a decree making a § 16-910 distribution
to Senyi, the trustee could argue, Senyi has no ownership
interest in the debtor's Yelverton Farms, Ltd. shares, and they
remain the debtor's and subject to execution by a judgment lien

11

creditor on the petition date.  Upon prevailing on that argument,
the bankruptcy trustee as a hypothetical judgment lien creditor
on the petition date by reason of 11 U.S.C. § 544, would defeat
Senyi's inchoate *ownership* rights under an equitable distribution
decree, and she would be left with a claim against the estate for
the debtor's obligation to pay his debt to her for any part of
the marital property awarded to her.  *See Johnson v. Fisher (In
re Fisher)*, 67 B.R. 666 (Bankr. D. Colo. 1986) (lifting stay to
permit divorce court to make equitable distribution determination
that, to the extent it involves property of the estate, could
only be asserted by the non-debtor spouse as an unsecured claim
against the estate).  Such a claim would be nondischargeable
under § 523(a)(15).

The argument that Senyi has no property ownership interest
in the Yelverton Farms, Ltd. shares seems to be supported by the
express terms of § 16-910 ("upon entry of a final decree of . . .
divorce, . . . and the filing of a petition for relief available
under this section"), pursuant to which, it can be inferred, the
spouses' rights under § 16-910 can give rise to a change in
ownership, *at the earliest*, only upon (1) the entry of a final
divorce decree, and (2) the filing of a request for a equitable
distribution of property under § 16-910.  Under that view, until
both conditions are met, one spouse does not have any ownership
interest in the property that is titled in the name of the other

spouse.[4]  If so, it follows that during the midst of a divorce
proceeding in which no equitable distribution decree has been
entered, a judgment lien creditor may execute upon the property
titled in the name of one of the spouses and make a collection on
its judgment via an execution sale.  As observed in *Tesfamariam
v. District of Columbia Dept. of Consumer and Reg. Affairs*, 645
A.2d 1105, 1109 (D.C. 1994), "the equitable distribution statute
is not primarily concerned with who owned what during the
marriage; rather, it addresses who will *get* what after the
marriage is over."

Moreover, in at least one instance, when the District of
Columbia legislature has intended a filing of a court proceeding
to result in vesting title to property in an individual when
title was in another individual's name, and to affect the rights

---

[4]  As in the case of an Illinois equitable distribution
statute regarding "marital property" (property acquired during
the marriage), it can be argued:

> The Act does not purport to affect property interests
> during the marriage.  The term "marital property" is a
> nomenclature devised to realize an equitable distribution
> of property upon termination of the marriage.  Operation
> of the term "marital property" under the Act is not
> triggered until the time of dissolution.  Section 503(b)
> does not prevent married persons from owning property
> separately during the marriage and disposing of it in any
> fashion that the property-owning spouse may choose.
> *Accord, Fournier v. Fournier* (Me. 1977), 376 A.2d 100,
> 102; *Painter v. Painter* (1974), 65 N.J. 196, 216 n. 5,
> 320 A.2d 484, 494 n.5.

*Kujawinski v. Kujawinski*, 376 N.E.2d 1382, 1386-1387 (Ill. 1978).

of judgment creditors of the title owner, it has said so
expressly. *See* D.C. Code § 21-2066(a) (2001) (appointment of a
conservator "vests in the conservator title as trustee to all
property of the protected individual presently held or after
acquired, or to the part of the property specified in the order.
. . ."). *See also* D.C. Code § 21-2066(c) ("Neither property
vested in a conservator by this section nor the interest of the
protected person in that property is subject to levy,
garnishment, or similar process, except as provided in an order
issued in a protective proceeding."). Having addressed the issue
of execution of a judgment against an asset in one type of
proceeding, the District of Columbia legislature could have
enacted similar legislation applicable to a divorce proceeding
with respect to execution by a judgment creditor upon a spouse's
property that is the subject of a request for an equitable
distribution by the other spouse under § 16-910, but it elected
not to.

   In addition, the District of Columbia Court of Appeals has
recognized that § 16-910(b) allows a divorce court "to reach
equitable results in divorce property dispositions without
requiring the court to search for strict legal or equitable
ownership interests in the nontitled spouse." *Hemily v. Hemily*,
403 A.2d 1139, 1142 (D.C. 1979). Accordingly, such an award can
rest on considerations that do not give rise to an equitable

14

lien.  *See Yeldell v. Yeldell*, 551 A.2d 832, 834 (D.C. 1988)
(equitable lien requires a showing of substantial contributions
by the non-titled spouse).  An equitable lien, once decreed by a
court, may in certain circumstances take priority over a pre-
existing judgment lien.  *See Osin v. Johnson*, 243 F.2d 653, 657-
58 (D.C. Cir. 1957) (equitable lien generally primes a judgment
lien but not if the judgment lienor extended credit on the basis
of the judgment debtor's record title).  A § 16-910(b) award, in
contrast, would not necessarily rest on considerations that would
support an equitable lien enjoying such priority over an earlier
judgment lien.[5]

There are arguably sound policy reasons for treating a
§ 16-910 award as effective to change ownership of property only
upon entry of the § 16-910 award.  Prior to entry of a final
decree of divorce, there might never be a divorce as the parties
might reconcile.  In addition, the parties might elect not to
invoke § 16-910.  Until a decree is entered under § 16-910, a
judgment creditor of one of the spouses ought not be held in
limbo with respect to enforcing its judgment by making a monetary
collection via an execution sale of property titled in the name

_____

[5]  The debtor has not contended that he can show that Senyi
is entitled to an equitable lien Yelverton Farms, Ltd. shares,
and nothing in this case has even suggested that she could be
viewed as making substantial contributions towards the debtor's
ownership of the shares as would be necessary for her to have an
equitable lien.

of the spouse who is the judgment debtor.  But that would be the
result if § 16-910 is treated as vesting present ownership in the
other spouse as of the commencement of the divorce proceeding if,
eventually, the Superior Court awards the property to her: the
judgment creditor could not sell the property and collect on its
judgment so long as the other spouse is deemed to have a present
ownership interest in the property depending on what the § 16-910
decree may eventually say.  Such a judgment creditor ought to be
entitled to serve a writ of execution seizing that debtor's
property, and with its writ being executed before the divorce
decree was entered or the request for relief under § 16-910 was
filed, the judgment lien would not be subject to being rendered
ineffective by a § 16-910 decree later changing the ownership of
the property.  *Hallsville Capital, S.A. v. Dobrish*, 87 A.D.3d
933, 930 N.Y.S.2d 1 (1st Dep't 2011).

Nevertheless, it is ultimately for the District of Columbia
Court of Appeals to decide the effect of a § 16-910(b) award as
against a judgment lien arising after the divorce proceeding
began and before the divorce court's later entry of the
§ 16-910(b) award.  It might decide that such an award should
enjoy the same priority as would an equitable lien decree.

Decisions construing the laws of other states reach varying
results.  On the one hand, some decisions hold that under the
applicable state law, an equitable distribution decree is not

effective to change ownership until the decree is entered, and thus an earlier judgment lien on the property (as property of the owner of title) is not defeated by the change in ownership. *See, e.g., In re Cole*, 202 B.R. 356, 360 (Bankr. S.D.N.Y. 1996), construing New York law, and stating:

> If bankruptcy intervenes before the state court enters the judgment, the trustee's status as hypothetical lien creditor cuts off the non-debtor spouse's inchoate rights in marital property, *In re Becker*, 136 B.R. 113, 118 (Bankr. D.N.J. 1992), and leaves her with a general unsecured claim. [Citations omitted.]

*See also Blair v. Hohenberg (In re Hohenberg)*, 174 B.R. 487, 491-93 (Bankr. W.D. Tenn. 1994) (construing Tennessee equitable distribution statute to require that there is no change in ownership until the divorce court enters a decree of equitable distribution); *Jelin v. NRG Barriers, Inc.*, 2006 WL 522423 (Me. Super. Jan. 27, 2006) (construing a Maine statute and contrasting a Kansas statute that specifically provided that "[e]ach spouse has a common ownership in marital property which vests at the time of commencement of such [divorce] action"); *Anderson v. Briglevich (In re Briglevich)*, 147 B.R. 1015, 1022 (Bankr. N.D. Ga. 1992); *In re Vann*, 113 B.R. 704, 706 (Bankr. D. Colo. 1990).

On the other hand, other decisions conclude that the applicable state law provides for the eventual ownership change under an equitable distribution decree to be effective as of the commencement of the divorce case, and a judgment lien executed after that date reaches only what remains property of the

17

judgment-debtor under the decree.  *See, e.g., White v. Bell (In re White)*, 212 B.R. 979 (B.A.P. 10th Cir. 1997) (following Wyoming decisions construing equitable distribution statute as vesting in each spouse, upon filing of the divorce petition, a vested interest in the spouses' marital property subject to subsequent definition).  *See also Bennett v. Bennett (In re Bennett)*, 175 B.R. 181, 183 (Bankr. E.D. Pa. 1994) (following Pennsylvania decisions that a judgment lien executed during the divorce proceeding only reaches what the judgment debtor is eventually awarded under the marital distribution decree).

The bottom line is that a bankruptcy trustee faces uncertainty regarding whether a postpetition D.C. Code § 16-910 award to a non-debtor spouse of property titled in the name of the debtor can defeat the trustee's rights under 11 U.S.C. § 544 against such property as a hypothetical judgment lien creditor on the petition date.  I only highlight the issue because, as next discussed, the debtor appears to assume that a § 16-910 award of an ownership interest in the Yelverton Farms, Ltd. shares would be effective to vest that ownership interest in Senyi as of the commencement of the divorce proceeding, and appears to intend to seek entry of a consent decree in the Superior Court declaring Senyi to be a 50% owner of the shares pursuant to § 16-910.  That presents issues of collusion to which I next turn.

18

F

The debtor represents that on June 4, 2012, the District of Columbia Court of Appeals remanded the divorce proceeding to the Superior Court of the District of Columbia "in order to approve a comprehensive and final property settlement, apart from their Pre-Marital Agreement, **pursuant to D.C. Code Section 16-910.**" [Emphasis added.]  Senyi has attached to her motion for summary judgment in *Yelverton v. Senyi de Nagy-Unyom*, Adversary Proceeding No. 12-10011 (a proceeding to determine whether her claims against the debtor are nondischargeable) two e-mails to her from the debtor.  In the first one, dated June 19, 2012, the debtor states in relevant part:

> What I would want to do after the Discharge is determined is to then **enter into a property settlement with you** in the remanded Superior Court proceeding.  I would agree **to convey to you as an owner 50% of my stock in Yelverton Farms, Ltd.**  The Domestic Relations Judge has the power to convey to you ownership of property held by the Chapter 7 Trustee.  This would need to be approved by the Bankruptcy Court, but because it would be a Non-Dischargeable property settlement for court-ordered domestic support, the Bankruptcy Court would be required to approve it.  **The Trustee's Settlement would then be nullified because the Trustee has no power to Settle as to property that you own.**  The result would be that there could be no Settlement without your sole consent at the price that you would agree to.

In the second e-mail, dated June 20, 2012, the debtor states in relevant part:

> The Remand to the Superior Court opens up for the first time the opportunity for title to my remaining tentative assets to be transferred to you by the Superior Court in

19

a Non-Discharageable property settlement. The Superior
Court even has the authority to liquidate these assets
for your benefit. As Non-Dischargeable, the Bankruptcy
Court cannot stop it, nor can the North Carolina court
stop it. You having legal title to property puts you in
the ultimate priority position, which is far better than
having a right to receive income from someone else's
property.

These communications, together with the debtor's motion to
vacate, establish an apparent scheme to deprive the bankruptcy
estate of 50% of the debtor's shares in Yelverton Farm, Ltd. by
having a consent judgment vest that 50% in Senyi pursuant to an
equitable distribution under § 16-910 even though § 16-910(a)
calls for the debtor's 100% interest in the shares to remain his
property because they were acquired by him before he married
Senyi.  If the scheme were to succeed, it would amount to a fraud
upon the bankruptcy estate (if, in the District of Columbia, such
an award could defeat a judgment lien executed upon the shares
prior to entry of the § 16-910 decree).  It is unlikely that the
Superior Court would permit the scheme to succeed by acceding to
the request for entry of such a consent judgment.[6]

     In any event, the estate cannot be trumped by the debtor's
transferring to Senyi a 50% interest via a collusive consent
judgment: the transfer would fare no better than a deed of
conveyance by the debtor of the 50% interest.  Either would be

---

     [6]  The trustee may wish to intervene in the Superior Court
to assure that no such judgment is entered, thereby mooting the
necessity to challenge such a judgment's res judicata effect
based on its being a collusive judgment.

ineffective against the chapter 7 trustee.  This court's order
lifting the automatic stay of 11 U.S.C. § 362(a) to permit the
Superior Court to proceed to make an equitable distribution of
marital property under § 16-910 was not intended to authorize a
collusive consent judgment (one to which Senyi is not entitled by
reason of § 16-910(a)) that attempts to deprive the bankruptcy
estate of the debtor's shares in Yelverton Farms, Ltd.

The first reason such a scheme would not succeed is this.
Based on *Pepper v. Litton*, 308 U.S. 295 (1939), such a collusive
consent judgment will not alter the property of the estate as of
the petition date under 11 U.S.C. § 541.  In *Pepper v. Litton*,
308 U.S. at 305-306, the Court rejected a claim of res judicata
and sustained the power of a bankruptcy court to look behind a
collusive state court judgment.  Accordingly, the consent
judgment would not be effective against the trustee.  *See Dionne
v. Keating (In re XYZ Options, Inc.)*, 154 F.3d 1262, 1267-69
(11th Cir. 1998); *Webster v. Hope (In re Hope)*, 231 B.R. 403,
415-16, 420-23 (Bankr. D.D.C. 1999) (analogous issues of setting
aside prepetition property settlement as a fraudulent conveyance,
and the non-preclusive effect against a trustee of a Superior
Court judgment incorporating that settlement); *Harman v. Sorlucco
(In re Sorlucco)*, 68 B.R. 748, 752-54 (Bankr. D.N.H. 1986)
(same).

The same outcome would result, in any event, under District

of Columbia law, under which "a prior judgment operates as *res
judicata* only in the absence of fraud or collusion." *Interdonato
v. Interdonato*, 521 A.2d 1124, 1132 (D.C. 1987) (citing *Riehle v.
Margolies*, 279 U.S. 218, 225 (1929)). *See also Mejia v. Reed*, 74
P.3d 166 (Cal. 2003) ("[W]e find no legislative policy to protect
such agreements from attack as instruments of fraud.").

The trustee has another way of depriving such a collusive
judgment of res judicata effect, namely, as a hypothetical
judgment lien creditor under 11 U.S.C. § 544 on the bankruptcy
petition date.[7]  If District of Columbia law would accord the
§ 16-910 award retroactive effect as of the filing of the divorce

---

[7]  Without the necessity of an order, the trustee's rights
under § 544 as a judgment lien creditor may be brought to bear
against such an award (if a hypothetical judgment lien on the
debtor's Yelverton Farms, Ltd. shares on the petition date would
not be defeated by a later equitable distribution decree for
Senyi to receive such property).  Although this court has on
prior occasion expressly preserved the trustee's § 544 rights in
lifting the automatic stay to permit a § 16-910 proceeding to go
forward, *see In re Persley*, 2008 WL 249855, at *4 (Bankr. D.D.C.
Jan. 25, 2008), the § 544 rights are still intact even if the
order lifting the automatic stay does not so provide.  Including
such a provision in an order lifting the stay, however, alerts
the Superior Court to the possibility that the trustee may
attempt to invoke § 544, and allows the Superior Court to take
that into account in framing a § 16-910 award.  *See In re
Persley*, 2008 WL 249855, at *3 n.6 (noting that the Superior
Court "could leave the award of alimony subject to adjustment if
that proved necessary based on events in the bankruptcy case"
resulting from the trustee's invoking § 544 as to a § 16-910
award of shares of stock).

22

complaint,[8] a filing which preceded the filing of the debtor's bankruptcy petition, the award would be treated as effecting a prepetition transfer, and that transfer, as a collusive award, would under 11 U.S.C. § 544 be ineffective against the trustee as a hypothetical judgment lien creditor on the petition date, as a hypothetical judgment lien creditor could, under District of Columbia law, have the collusive award treated as ineffective against the judgment lien.

G

For all of these reasons, I reject the debtor's argument that Senyi has an ownership interest in the debtor's Yelverton Farms, Ltd. shares that precluded the court's approving the settlement.

II

The debtor raises other arguments regarding the adequacy of the settlement, but those arguments are an attempt to re-argue points already disposed of in the court's oral decision approving the settlement.   They do not show anything warranting reconsideration of the court's prior ruling.

---

[8]  If District of Columbia law does *not* accord a § 16-910 award retroactive effect as of the commencement of the divorce proceeding, the award would be ineffective against the trustee as a 11 U.S.C. § 544 hypothetical judgment lien creditor on the petition date that will have preceded the eventual date of entry of the § 16-910 award.  The judgment lien would reach the debtor's sole ownership of the Yelverton Farms, Ltd. shares on the petition date and not be defeated by a later ownership interest awarded to Senyi.

23

III

An order follows denying the debtor's motion.

[Signed and dated above.]

Copies to: Debtor; recipients of e-notification of filings.