The document below is hereby signed.

Signed: January 29, 2013



_S. Martin Teel Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| STEPHEN THOMAS YELVERTON, | ) | Case No. 09-00414 |
| | ) | (Chapter 7) |
| Debtor. | ) | Not for publication in |
| | ) | West's Bankruptcy Reporter. |

<u>MEMORANDUM DECISION RE CROSS MOTIONS FOR SUMMARY JUDGMENT</u>

The chapter 7 trustee filed objections to the debtor's amended claims of exemption. This matter comes before the court on the debtor's and the chapter 7 trustee's cross motions for summary judgment on the trustee's objections.

On June 18, 2012, this court approved a global settlement negotiated by the chapter 7 trustee that provides for the transfer of the debtor's stock in the family business, Yelverton Farms, Ltd., to his siblings and the mutual release of all claims in consideration of a cash payment to the bankruptcy estate in the amount of $110,000. The debtor subsequently filed amended exemption schedules. The amended exemptions relate to property that is subject to the global settlement. The trustee

filed objections to the amended exemption schedules arguing both that the debtor should not be allowed to amend his exemptions at this late stage in the case and that the property may not be exempted under either the federal or state law exemptions.

I

Summary judgment may be granted only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. "A dispute over a material fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Arrington v. United States*, 473 F.3d 329, 333 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). A fact is "material" if it might affect the outcome of the suit under the substantive governing law. *Id.* To create an issue of material fact, the nonmoving party's factual assertion must be supported by the record. *See Hinson ex rel. N.H. v. Merritt Educ. Ctr.*, 579 F. Supp. 2d 89, 92 (D.D.C. 2008) ("'factual assertions' that are unsupported by citations to accurate record evidence are insufficient to create issues of material fact.").

In evaluating a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Arrington,* 473 F.3d 329, 333 (D.C. Cir. 2006). "Furthermore, in ruling on cross-motions for summary judgment,

2

the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." *Footbridge Ltd. Trust v. Zhang*, 584 F. Supp. 2d 150, 158 (D.D.C. 2008), *aff'd,* 358 F. App'x 189 (D.C. Cir. 2009).  "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987).

## II

The following undisputed facts are drawn from Yelverton's and the chapter 7 trustee's statements of undisputed facts, as well as the record in this case.[1]

On May 14, 2009, the debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code (11 U.S.C.).  The case

---

[1]  Yelverton and the chapter 7 trustee have failed to identify a genuine issue of material fact.  Yelverton is correct that the trustee's opposition does not strictly comply with Local Civil Rule 7(h).  The trustee merely lists the paragraphs in Yelverton's motion which he disputes, without providing any supporting references to the record.  *See Tarpley v. Greene*, 684 F.2d 1, 7 (D.C. Cir. 1982) (affirming district court's grant of summary judgment where the nonmoving party "simply asserted, without citing evidence in the record, that there was a disputed issue . . ..").  Nevertheless, only Yelverton's properly supported assertions of fact will be accepted as true.  *See* Fed. R. Civ. P. 56(c).

3

was later converted to chapter 7.  Dkt. No. 323.  Wendell W.
Webster was appointed as the chapter 7 trustee.  Dkt. No. 336.

Yelverton's principal assets consist of his shares of stock
in a family owned business named Yelverton Farms, Ltd., and
certain litigation claims filed by Yelverton in the Federal
District Court in North Carolina and this court.  Tr. Stmt.
¶¶ 2—4.

On May 19, 2009, the debtor filed his schedules.  In the
schedules, the debtor listed his sole ownership of 1,333 shares
in Yelverton Farms, Ltd., but he did not claim any exemption for
the Yelverton Farms stock.  Yelverton's Stmt. ¶ 2.[2]  On May 29,
2009, Yelverton filed Amended/Supplemental Schedules.  In these
schedules, Yelverton listed his sole ownership interest in
certain litigation claims against the majority shareholders of
Yelverton Farms for dilution and diminution in the value of his
equity in the corporation.  He did not claim any exemption for
the Yelverton Farms stock or the related litigation claims.  Tr.
Stmt. ¶ 3.  On September 27, 2010, the debtor filed an Amended
Schedule B on which he listed as personal property the
Production Contract with Maxwell Foods, Inc.  Yelverton's Stmt.
¶ 5; Dkt. No. 348.

---

[2]  A debtor lists personal property on Schedule B—Personal
Property, but any exemption of such property must be asserted on
Schedule C—Property Claimed as Exempt.

After filing his bankruptcy petition, Yelverton commenced several lawsuits.  He filed two adversary proceedings in this court, one seeking turnover of his shares of stock in Yelverton Farms (Adv. Proc. No. 10-10003) and one seeking to avoid the sale of a tract of land in North Carolina (Adv. Proc. No. 10-10004).  Yelverton also filed suit in the U.S. District Court for the Eastern District of North Carolina against Yelverton Farms and the majority shareholders, seeking judicial dissolution and liquidation of Yelverton Farms, Ltd., or a mandatory buyout of his stock, among other claims (the "North Carolina case").  Yelverton's Stmt. ¶ 6, Tr. Stmt. ¶ 15.

After the case was converted to chapter 7, Webster, the chapter 7 trustee, was substituted as plaintiff in the North Carolina case.  Tr. Stmt. ¶ 16.  On March 23, 2012, the trustee concluded negotiations with Yelverton Farms, Phyllis Edmundson, Charles Edmundson, Deborah Marm and Walter Marm, Jr. ("the defendants") for the full and complete settlement and release of all claims asserted by or against the debtor and the defendants in connection with the debtor's ownership interest in Yelverton Farms, Ltd.  *Id.*  The settlement provides for the transfer of the debtor's stock to the defendants and the mutual release of all claims, in consideration of a cash payment to the bankruptcy estate in the amount of $110,000.  *Id.*

On May 4, 2012, the trustee filed a motion for approval of the settlement. Tr. Stmt. ¶ 17; Dkt. No. 451. On June 18, 2012, the court held an evidentiary hearing on the motion and approved the settlement. Dkt. No. 477. Yelverton filed objections to the approval of the settlement and objected at the hearing, but he did not raise the issue of exemptions in any of his objections. *See* Dkt. Nos. 464, 475. The debtor's subsequent motion to vacate the order and for a new trial (Dkt. No. 483) was denied by this court (Dkt. No. 507).

Yelverton then filed a flurry of amended claims of exemption. Since the court issued the order approving the settlement agreement, Yelverton has filed four amended Schedules C, the schedule used for listing property claimed as exempt. On July 22, 2012, he filed *Debtor's Amended Schedule C* (Dkt. No. 487), in which he claimed as exempt under D.C. Code § 16-910 property he asserts is owned as tenants by the entireties with his former spouse, Senyi.[3] The property claimed as exempt is 277 acres in North Carolina, his stock in Yelverton Farms, Ltd., all claims in the North Carolina case, a Mercedes-Benz, all non-bankruptcy claims in two adversary proceedings in this court, and a residence.

---

[3] Yelverton and Alexandra Nicole Senyi De Nagy-Unyom ("Senyi") are involved in a contested divorce proceeding. On August 11, 2010, the Superior Court for the District of Columbia entered a Judgment of Absolute Divorce. The Superior Court has not yet entered a final decree pursuant to D.C. Code § 16-910.

On July 24, 2012, Yelverton filed *Further Amended Schedule C* (Dkt. No. 491), which added more causes of action as exempt as tenancy by the entireties property.  Specifically, Yelverton added all claims arising from Yelverton Farms, Ltd., all claims against the defendants in the North Carolina case, all claims by Yelverton during the marriage against any third parties, and all claims for "tortuous [sic] interference with marital relations under North Carolina law."

On July 26, 2012, Yelverton filed *Debtor's Amended Schedules and Response to Orders* (Dkt. No. 494), which revised the previously filed exemptions by changing the valuations of the property claimed as exempt and adding the Production Contract with Maxwell Foods, Inc. as exempt property.  That filing and all prior filings asserted exemptions only under § 522(b)(3).

On August 30, 2012, Yelverton filed *Debtor's Supplemental Amended Schedule C* (Dkt. No. 519), which claims "additional alternative exemptions" under § 522(d).  First, under § 522(d)(5), Yelverton claims an exemption in 1,333.3 shares of stock in Yelverton Farms, Ltd. and in the Production Contract with Maxwell Foods, Inc.  He states that the value of each of these claimed exemptions is $7,500.  Second, under § 522(d)(11)(E) he claims exemptions as to (1) the income from 1,333.3 shares of stock in Yelverton Farms, Ltd.; (2) the

7

compensation for loss of income from Yelverton Farms, Ltd.; and
(3) Count 1 in Case No. 5:09-cv-331 before the U.S. District
Court for the Eastern District of North Carolina.  For each of
these three exemptions, Yelverton states that the value of the
claimed exemption is "limited to reasonable support."

To clarify, Yelverton has claimed exemptions in his
Yelverton Farms, Ltd. stock, various litigation claims, and the
Production Contract with Maxwell Foods, Inc. as tenants by the
entireties property owned jointly with his former spouse
pursuant to 11 U.S.C. § 522(b)(3)(B).  In the alternative,
Yelverton has claimed exemptions in his Yelverton Farms stock,
Count I of the North Carolina case, the Production Contract, and
compensation for loss of income from Yelverton Farms, Ltd., all
pursuant to 11 U.S.C. § 522(d).  The trustee has filed
objections to Yelverton's amended claims of exemption in his
Yelverton Farms, Ltd. stock and the related litigation claims.

III

To exempt property from the bankruptcy estate, the debtor
must file a list of property that the debtor claims as exempt.
11 U.S.C. § 522(l).  A debtor asserts his claim of exemptions on
Schedule C, "Property Claimed as Exempt."  Fed. R. Bankr. P.
4003.  Federal Rule of Bankruptcy Procedure 1009(a) permits a
debtor to amend his claim of exemptions "as a matter of course
at any time before the case is closed," and no court approval is

8

required for such an amendment, although the court may reject
the amendment based on bad faith or prejudice. *See Martinson v.
Michael (In re Michael)*, 163 F.3d 526, 529 (9th Cir. 1998). A
claimed exemption is presumptively valid. *Carter v. Anderson
(In re Carter)*, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999). As the
objecting party, the trustee has the burden of proving that the
exemption is not proper. Fed. R. Bankr. P. 4003(c).

Under 11 U.S.C. § 522(b)(1) a debtor must elect to claim
exemptions under § 522(b)(2), which is limited to property that
may be exempted under § 522(d), or under § 522(b)(3)
(nonbankruptcy law exemptions, whether under state law or
federal law, including the debtor's interest in tenancy by the
entireties property to the extent exempt from process under
applicable nonbankruptcy law). In other words, Yelverton may
exempt property under either § 522(d) or § 522(b)(3), but not
under both schemes: "he may not mix them." *John T. Mather Mem'l
Hosp. of Port Jefferson, Inc. v. Pearl*, 723 F.2d 193, 194 (2d
Cir. 1983).

Yelverton initially claimed exemptions only under
§ 522(b)(3), invoking exemptions under District of Columbia law
(including tenants by the entireties law), but in his last
amendment to his claim of exemptions he asserted, in the
alternative, exemptions under § 522(d). This did not violate
the requirement that he is allowed to proceed under the scheme

9

of § 522(b)(3) or the scheme of § 522(d), but not both:

Yelverton is not mixing his exemptions under the two schemes;

instead, he is asserting exemptions under the § 522(b)(3) scheme

or, *in the alternative*, under the § 522(d) scheme, whichever is

best.

It might be argued that Yelverton cannot assert exemptions

in the alternative.  The Official Form of Schedule C requires a

debtor to elect to proceed under § 522(b)(2) (*i.e.,* to proceed

to exempt property under § 522(d)) or under § 522(b)(3).  *See*

*also Heitkamp v. Dyke (In re Dyke)*, 943 F.2d 1435, 1438 (5th

Cir. 1991) ("The debtor cannot elect the most favorable

exemptions in each scheme: he must weigh the advantages of each

scheme and then choose one or the other.").  Nevertheless, it is

permissible and makes sense to allow the debtor to claim

exemptions in the alternative, and to leave it to the court to

rule on which set of exemptions is best for the debtor.  *See In*

*re Lamb*, 179 B.R. 419, 424 (Bankr. D.N.J. 1994); *In re Werner,*

31 B.R. 418, 423 (Bankr. D. Minn. 1983).  *Cf.* Fed. R. Civ. P.

8(d)(3) ("A party may state as many separate claims . . . as it has, regardless of consistency.")[4]

A debtor claiming exemptions under one scheme and in the alternative under the other scheme will be treated as claiming exemptions under the scheme that is best for him, but all of the exemptions claimed in the alternative under the other scheme (including any that would be proper under that other scheme) must be disallowed.  To that extent, the court sustains the trustee's objection that Yelverton may not claim exemptions under both § 522(b)(3) and § 522(d).  Specifically, Yelverton will be allowed to assert exemptions under § 522(d) (as the court concludes below that the § 522(d) scheme is the most advantageous to him) and his exemptions claimed in the alternative under § 522(b)(3) will be disallowed.

---

[4]   Allowing a debtor to proceed in the alternative avoids the delay that could occur if she elects to proceed under only one of the two schemes of exemptions and then amends her exemptions to proceed under the other scheme when the court's rulings reveal that her first election is not the most advantageous.  *See Goff v. Taylor (In re Goff)*, 706 F.2d 574, 579 n.13 (5th Cir. 1983):

> [T]he Bankruptcy Code envisions the possibility that a bankrupt, having made an improvident election, may petition to obtain relief, or have his election choice changed for him by the courts on their own motion, in the interest of justice.  *See*, *e.g.*, H. Rep. No. 95-595, 95th Cong., 2d Sess. 360 (1977), reprinted in 1978 U.S. Code Cong. & Ad. News 5963, 6316.

### A. Effect of the Amended Exemptions
### on the Global Settlement

Before addressing whether Yelverton has properly claimed
exemptions, the court will address a preliminary matter.  The
trustee argues that allowing the debtor to amend his exemptions
would prejudice the trustee's administration of the estate.  In
support, the trustee asserts that the amended exemptions would
prevent the trustee from consummating the global settlement
approved by the court.

The court disagrees that the amended exemptions would block
consummation of the settlement.  It is too late for Yelverton to
revisit the settlement.  The trustee had the authority to enter
into the settlement.  The stock in Yelverton Farms, Ltd., the
litigation claims, and the Production Contract were property of
the estate at the time the trustee entered into the settlement
agreement.  Finally, the court has approved the settlement
agreement.  Accordingly, the settlement is binding on Yelverton
and he cannot prevent the settlement agreement from being
consummated by amending his exemptions.

### B. Exemption of the Stock and Litigation Claims
### as Tenants by the Entireties Property

A debtor who claims exemptions under state law may exempt

> any interest in property in which the debtor had,
> immediately before the commencement of the case, an
> interest as a tenant by the entirety or joint tenant
> to the extent that such interest as a tenant by the

entirety or joint tenant is exempt from process under
applicable nonbankruptcy law.

11 U.S.C. § 522(b)(3)(B). Either North Carolina law or District
of Columbia law is the applicable nonbankruptcy law under this
section. The trustee argues that the court should apply the law
of the state where the entireties property is located and not
the law of the debtor's domicile. *See McNeilly v. Geremia (In
re McNeilly)*, 249 B.R. 576, 581 (B.A.P. 1st Cir. 2000)
(applicable nonbankruptcy law is that of the situs of the asset
held by the debtor as a tenant by the entireties); *see also In
re Garrett*, 435 B.R. 434, 455 (Bankr. S.D. Tex. 2010) (same);
*Holland v. Safanda (In re Holland)*, 366 B.R. 825, 829 (N.D. Ill.
2007) ("[T]he Court holds that 'applicable nonbankruptcy law' as
it is used in section 522(b)(3)(B) does not mean exemption law
of the debtor's domicile."). However, the court does not need
to resolve whether North Carolina law or District of Columbia
law applies. Under the applicable law of either state,
Yelverton may not exempt the stock or related litigation claims
as entireties property.

North Carolina law does not recognize an estate by the
entireties in personal property. *See Bowling v. Bowling*, 91
S.E.2d 176, 180 (N.C. 1956) ("[I]t must be borne in mind that an
estate by the entirety in personal property is not recognized in
North Carolina."); *see also Lovell v. Rowan Mut. Fire Ins. Co.*,

13

274 S.E.2d 170, 174 (N.C. 1981); *Wilson v. Ervin*, 42 S.E.2d 468, 470 (N.C. 1947).  It follows that under North Carolina law, Yelverton did not have an interest as a tenant by the entirety in his Yelverton Farms stock, the related litigation claims, or the Production Contract immediately before the commencement of his bankruptcy case.  Therefore, if North Carolina law applies, Yelverton may not exempt the stock and related litigation claims under 11 U.S.C. § 522(b)(3)(B).

District of Columbia law recognizes an estate by the entireties in personal property as well as real property. *Flaherty v. Columbus*, 41 App. D.C. 525, 529 (D.C. 1914).  "The most significant incidents of this concurrent estate are the unilaterally indestructible right of survivorship; the inability of either spouse, acting alone, to alienate his interest in the property; and the broad immunity from the claims of separate creditors."  *Travis v. Benson*, 360 A.2d 506, 509 (D.C. 1976). "The tenancy by entireties is essentially a joint tenancy, modified by the common-law theory that husband and wife are one person."  *Settle v. Settle*, 8 F.2d 911, 912 (D.C. Cir. 1925). A tenancy by the entireties is created only if the four common law unities of interest, title, time, and possession required for joint tenancy are present.  2 Tiffany Real Prop. § 430 (2012 ed.); *see also Daniel v. Wright*, 352 F. Supp. 1, 3 nn.5 & 6 (D.D.C. 1972).

Yelverton claims that he owns his stock as a tenant by the entirety with his former spouse, Senyi, based on a written promise to gift her the first $100,000 in proceeds from the sale of his stock.  Yelverton relies on an April 2, 2008 document which states:

> I, Stephen Thomas Yelverton, agree to give my wife, Alexandra-Nicole Senyi de Nagy-Unyom, the first $100,000 in proceeds that I receive from the sale of my interest in my family's pig operation in North Carolina.

Exhibit to Claim No. 25-1 on the Claims Register.  This promise does not create an estate by the entireties in the debtor's Yelverton Farms stock because none of the common law unities existed at the time of the alleged conveyance.  Yelverton and Senyi did not receive identical interests in the stock, their interests did not accrue by the same instrument of conveyance, their interests did not commence at the same time, and they are not vested with the whole entirety estate.  Moreover, as this court has previously discussed, the promissory note did not confer an ownership interest in Senyi.  *See In re Yelverton*, 477 B.R. 282, 287 (Bankr. D.D.C. 2012).

The causes of action related to the debtor's Yelverton Farms stock likewise fail to meet any of the requirements for entireties property under the law of the District of Columbia.[5]

As a matter of law, Yelverton is not entitled to exempt his Yelverton Farms stock, his litigation claims, or his Production Contract as property owned as tenants by the entireties under either North Carolina law or District of Columbia law, and the trustee's objection to Yelverton's claims of exemption pursuant to 11 U.S.C. § 522(b)(3)(B) will be sustained.

### C. Exemption of the Stock and Litigation Claims Under the Federal Exemptions

Yelverton argues that he should be allowed, pursuant to 11 U.S.C. §§ 522(d)(5) and 522(d)(11)(E), to exempt from the bankruptcy estate the Production Contract with Maxwell Foods, Inc., his shares of stock in Yelverton Farms, Ltd. and the related cause of action. The trustee argues, first, that Yelverton should not be permitted to amend his exemptions at

---

[5] Yelverton repeatedly uses the term "marital entireties property" in his filings. This is a melding of two terms: "marital property" and property owned as "tenants by the entireties." Marital property refers to "all other property and debt accumulated during the marriage or domestic partnership" and is relevant to the equitable distribution of property in a divorce proceeding. *See* D.C. Code § 16-910. A tenancy by the entireties is an estate in property. The term "marital entireties property" carries no legal meaning. However, the court has interpreted the term in the light most favorable to Yelverton as referring to property owned as tenants by the entireties, because the concept of marital property is not relevant to the exemption under 11 U.S.C. § 522(b)(3)(B).

this point because it would prejudice the trustee and, second, that the property cannot be exempted under those statutory provisions.

### i.   11 U.S.C. § 522(d)(5)

Under the so-called "wild card" exemption of section 522(d)(5), the debtor may exempt his "aggregate interest in any property, not to exceed in value $1,150 plus up to $10,825 of any unused amount of the exemption provided under paragraph (1) of this subsection." 11 U.S.C. § 522(d)(5). For a case commenced prior to April 1, 2010, as this case was, the amount entitled to be exempted in § 522(d)(5) is limited to the statutory cap of $11,200. *See* 75 Fed. Reg. 8747 (Feb. 25, 2010).

At the hearing on the summary judgment motions, the trustee conceded that if Yelverton's amended exemptions would not block consummation of the settlement, then the trustee would not be prejudiced by the amended claims of exemption pursuant to § 522(d)(5). As discussed above, Yelverton's amended exemptions under § 522(d)(5) would not prevent the trustee from consummating the settlement.

Moreover, an exemption under § 522(d)(5) does not exempt the asset itself. Instead, it exempts a capped dollar amount of the debtor's interest in that asset. *See* 11 U.S.C. § 522(d)(5) (allowing exemption of "[t]he debtor's aggregate *interest* in any

property . . ..") (emphasis added); *see also Schwab v. Reilly*, --- U.S. ---, 130 S. Ct. 2652, 2661—2662, 177 L. Ed. 2d 234 (2010) ("As we have recognized, most of [the categories of property that a debtor may claim as exempt under § 522(d)] define the 'property' a debtor may 'clai[m] as exempt' as the debtor's 'interest'—up to a specified dollar amount—in the assets described in the category, *not* as the assets themselves.").  That is an additional reason why Yelverton's amended exemptions cannot undo the settlement.  Even if Yelverton had claimed the exemptions prior to approval of the settlement, the settlement would have been approved as in the best interest of the estate, with Yelverton entitled to exemptions of a fixed dollar amount to be applied against the proceeds of the settlement.

Yelverton has claimed $7,500 in his stock and $7,500 in the Production Contract as exempt under § 522(d).  This exceeds the statutory cap, and the trustee's objection will be sustained to the extent the amended exemptions exceed $11,200.  Yelverton will be allowed an exemption in the proceeds of the settlement in the amount of $11,200 as the proceeds of his stock (including any claims based on such stock ownership) and of any claims under the Production Contract (all of which were released pursuant to the settlement).

18

### ii.   11 U.S.C. § 522(d)(11)(E)

The trustee also objects to Yelverton's claim of exemption under 11 U.S.C. § 522(d)(11)(E).[6]  Yelverton has asserted exemptions under § 522(d)(11)(E) in income from his Yelverton Farms, Ltd. stock, compensation for loss of income from Yelverton Farms, Ltd., and Count 1 in the North Carolina case. However, other than these vague statements on Schedule C, there is no evidence in the record that sets forth what portion of the claims settled entailed claims for compensation for loss of future earnings of the debtor, nor that would permit a finding regarding the amount of the settlement attributable to such claims for compensation for loss of future earnings of the debtor.

Moreover, on Schedule C, Yelverton was required to provide a description of the property claimed as exempt, to specify the law providing each exemption, and to set forth the value of the claimed exemption.  He states only that the value of the claimed exemptions under 11 U.S.C. § 522(d)(11)(E) is "limited to reasonable support."  Yelverton has not properly claimed these exemptions because they are not sufficiently specific as to the

---

[6]   This section provides that the debtor may exempt the "debtor's right to receive, or property that is traceable to . . . a payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor."

value of the claimed exemptions.  "[I]n order to furnish a
trustee with sufficient detail to enable that trustee to reach
an intelligent determination, the debtor is required to list in
the third column of Schedule C a numerical value for each
claimed exemption."  *In re Bell*, 179 B.R. 129, 131 (Bankr. E.D.
Wis. 1995); *see also In re Ogden*, 114 B.R. 730, 731 (Bankr. D.
Colo. 1989) ("[N]on-specific claims of exemptions have no legal
effect, moreover, they impede the ability of the trustee and the
creditors to ascertain the validity of the exemptions
claimed.").  The court will disallow without prejudice
Yelverton's claims of exemption under § 522(d)(11)(E).[7]

IV

Yelverton contends that he is entitled to obtain the
Production Contract because the trustee did not convey that
pursuant to the settlement and has waived the Production
Contract as having no value left to the estate.  Yelverton has
not pursued a motion to compel abandonment, and the trustee
released, pursuant to the settlement, any claims against the
other settling parties, which would include any claims against

---

[7]  If Yelverton amends his exemption claims under 11 U.S.C.
§ 522(d)(11)(E), and the trustee objects, then the trustee has
the burden of showing that the amount of the settlement proceeds
claimed as exempt as compensation for loss of future earnings is
not properly exemptible.  *See* Fed. R. Bankr. P. 4003(c); *see
also In re Whitson*, 319 B.R. 614, 618 (Bankr. E.D. Ark. 2005)
(finding that because the court had to speculate as to the
proper portion of the settlement award attributable to loss of
future earnings, the trustee had not met his burden of proof).

20

them arising under the Production Contract.  If the trustee
sells what rights remain under the Production Contract that were
not settled, Yelverton can attempt to assert an exemption as to
the sale proceeds.  If the trustee proceeds to allow the case to
be closed without having sold the Production Contract, then the
closing of the case will effect an abandonment to Yelverton of
what rights remain under the Production Contract (not including
claims that arose under the Production Contract but were
released under the settlement).

V

For all of these reasons, the trustee's motion for summary
judgment is granted in part and denied in part.  The trustee's
motion is granted to the extent that Yelverton's claims of
exemption under § 522(b)(3) are disallowed.  The trustee's
motion is also granted to the extent that his objection to
Yelverton's claim of exemption pursuant to 11 U.S.C.
§ 522(d)(11)(E) is sustained.  The trustee's motion is denied
with respect to his objection to Yelverton's claim of exemption
pursuant to 11 U.S.C. § 522(d)(5), except the exemption is
disallowed to the extent that the claimed exemption exceeds
$11,200.

Yelverton's motion for summary judgment is granted in part
and denied in part.  His motion is granted to the extent that he
is allowed an exemption of $11,200 in the proceeds of the global

21

settlement under 11 U.S.C. § 522(d)(5).  The remainder of

Yelverton's motion for summary judgment is denied.  A separate

order follows.

                              [Signed and dated above.]

Copies to: Debtor; Recipients of e-notification of orders.