The document below is hereby signed.

Signed: August 7, 2013



_S. Martin Teel, Jr._
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| In re | ) | |
| | ) | |
| STEPHEN THOMAS YELVERTON, | ) | Case No. 09-00414 |
| | ) | (Chapter 7) |
| Debtor. | ) | Not for publication in |
| | ) | West's Bankruptcy Reporter. |

MEMORANDUM DECISION RE DEBTOR'S
MOTION FOR RELIEF FROM JUDGMENT
<u>PER FRCP RULE 60 (b)(3) and (4) and (d)(3)</u>

The debtor's *Motion for Relief from Judgment Per FRCP Rule 60 (b)(3) and (4) and (d)(3)* seeks to vacate this court's decision of August 8, 2012, and to declare the settlement it upheld as void.  The *Motion* will be denied for the following reasons.

I

The order approving the settlement was entered on June 19, 2012, and the debtor's *Motion to Vacate Order and for New Trial As to Trustee's Settlement* (a motion under Fed. R. Civ. P. 59) was denied on August 8, 2012.  Under Fed. R. Civ. P. 60(c), a Rule 60(b) motion must be made within a reasonable time.  The debtor, Yelverton, alleges no reason for waiting so long to file

this Rule 60(b) motion. The issues Yelverton raises could have been raised when he objected to the proposed settlement.[1] He has no acted within a reasonable time.

II

Even if Yelverton had filed the *Motion* within a reasonable time, the grounds the *Motion* raises do not warrant vacating the order.

1. <u>Argument That the Settlement Agreement Reached Claims of Yelverton That Did Not Belong to the Bankruptcy Estate</u>. Yelverton argues first that "[t]he Settlement Agreement, dated March 2012, is . . . VOID ab initio because the Chapter 7 Trustee waived the post-Petition litigation claims of Yelverton, but where the Trustee had no legal right to waive under 11 U.S.C. 541." *Motion for Relief from Judgment* (Dkt. No. 666), at ¶ 9 (citation omitted). This argument is baseless.

First, the Settlement Agreement's preamble recited that:

> the Parties have agreed to compromise and enter into this Settlement Agreement to resolve and settle **all matters** and issues that have been asserted, or **which could have been asserted between them** in the District Court case, the Bankruptcy Case, the Edmundson Case or the Marm Case.

*Settlement Agreement* (Dkt. No. 451, Ex. 1) at p. 4 (emphasis added). The trustee, Webster, could only assert claims that were property of the estate under 11 U.S.C. § 541, so this preamble

---

[1] The orders approving the settlement are being reviewed on appeal, but failure to raise an issue at the trial level generally precludes consideration of that issue on appeal.

2

makes clear that it is a settlement regarding claims that were property of the estate, not postpetition claims.

Second, paragraph 3(a) of the Settlement Agreement states:

> The Trustee, **in his capacity as Chapter 7 Trustee in the bankruptcy case** of Stephen Thomas Yelverton, on behalf of himself, the Chapter 7 Bankruptcy Estate and, **to the extent permitted by law, Stephen Thomas Yelverton, individually**, (collectively the "Plaintiff") does hereby generally, without reservation and unconditionally remise, release, acquit and forever discharge [the other parties from all claims, etc.].

*Settlement Agreement*, at ¶ 3(a) (emphasis added).  Webster, as trustee, was "permitted by law" to release only those claims that were property of the estate.  The releases were only releases by Webster, as trustee, not releases by Yelverton (who, however, would be bound by the trustee's release of any claims of the estate).  The foregoing quoted language is a qualification of the following language in the same paragraph 3(a):

> It is specifically understood and agreed that this Settlement Agreement is intended to be a full and complete General Release of any and all claims by Stephen Thomas Yelverton, individually, of any kind whatsoever, against [the other parties] and shall constitute a bar to any further litigation **between these parties** for any matter or claim that existed prior to the execution of this Settlement Agreement.

*Settlement Agreement*, at ¶ 3(a) (emphasis added).  In other words, as of the execution of the Settlement Agreement, **the trustee's** (not Yelverton's) release of claims included all of the claims of Yelverton that could be released by the trustee "to the extent permitted by law," and what was being barred was further

3

litigation of claims of the estate and of claims against the estate of the other parties to the settlement.

Third, paragraph 4 made this doubly clear by stating that:

> this Settlement Agreement is intended to include all losses or damages of any and every nature **for which a claim was or might have been asserted by or against the other** relating to the ownership interest of Stephen Thomas Yelverton in Yelverton Farms, the Bankruptcy Case, the District Court case the Edmundson Case or the Marm Case as set forth in the complaints and amended complaints filed by Stephen Thomas Yelverton.

*Settlement Agreement* ¶ 4 (emphasis added).  In other words, the settlement reached those claims that the trustee had asserted or could have asserted against the other parties, not claims of Yelverton that did not become property of the estate and that, therefore, the trustee could not have asserted.

Fourth, even if the Settlement Agreement *had* specifically included a purported settlement of a claim that belonged to Yelverton and not to the bankruptcy estate, it would not be binding in that regard on Yelverton.  He was not a party to the Settlement Agreement, and would not be bound by a settlement of claims that belonged to him and not to the bankruptcy estate, and that the trustee had no authority to settle on his behalf.

Finally, Yelverton has not articulated a reason why he would have standing to complain if the Settlement Agreement *had* included a provision that is ineffective as to him.  The other parties to the Settlement Agreement (*i.e.*, the non-trustee parties) are the ones who would have standing in that regard.

4

They have not complained that the trustee snookered them into thinking the Settlement Agreement included a provision that reached, and was effective to release, claims that belonged to Yelverton, and not to the bankruptcy estate. The lack of any such complaint is obviously for the good reason that the Settlement Agreement did *not* include such a provision.

    2. <u>Argument that the Bankruptcy Court had "Abstained" From Jurisdiction</u>. Yelverton argues that the Settlement Agreement is void because this court entered an order that allowed the Superior Court to enter a decree regarding the marital property rights between Yelverton and his former spouse. As in the case of the first argument, this argument is silly because any property as to which the former spouse has a right of ownership that is superior to the rights of the bankruptcy estate would not be property of the estate, and would not have been reached by the Settlement Agreement. In any event, on March 5, 2013, the Superior Court ruled against Yelverton's attempt to have any of his claims that became property of the bankruptcy estate decreed to be marital property in which his former spouse has an

5

interest.[2]

3. <u>Argument That the Other Parties Committed Fraud By Claiming that Atkinson Owned the 1,333.3 Shares of Stock in Yelverton Farms, Ltd.</u>  At the hearing to approve the settlement, the trustee made clear that he did not view Atkinson as having a right of ownership in Yelverton's 1,333.3 shares of stock in Yelverton Farms, Ltd., and that by the time of the settlement being reached there was no longer any issue in that regard.  *See Transcript of June 18, 2012 Hearing*, Dkt. No. 546, at 170 ("From the time that I have been trustee in this case, the defendants have never disputed your ownership of stock to me.").  Accordingly, the Settlement Agreement could not have been procured by fraud even if, at an earlier stage, the defendants *had* made a misrepresentation regarding Atkinson owning the shares (which they did not).

---

[2] In the prior decision of August 8, 2012, this court addressed why such a decree in favor of the former spouse might (or might not) be ineffective to divest the bankruptcy estate of ownership of the claims.  Yelverton's arguments that in that decision the court erred in relying on the law of jurisdictions other than the District of Columbia and on privileged spousal communications is academic now that the Superior Court has ruled against him.  Those arguments would be pointless anyway because Webster settled only those claims that he had authority to settle.  That Yelverton has filed a motion in the District of Columbia Court of Appeals to vacate the Superior Court ruling of March 5, 2013, changes nothing: even if the former spouse were found to have an interest in property that is superior to the bankruptcy estate's, that would simply mean that the Settlement Agreement did not reach her interest.

4. <u>Argument that the Trustee Committed Fraud on the Bankruptcy Court</u>.  Yelverton's argument that the trustee committed fraud on the bankruptcy court is baseless.  As two non-trustee parties to the Settlement Agreement note:

> In the Motion, the Debtor also wrongfully accuses the Trustee and the United States Trustee's office, through the influence of Mrs. Edmundson and Mrs. Marm, of committing fraud on the Court.  The Debtor claims, among other allegations, that the U.S. Trustee's motion to convert his case was "highly unusual"; he claims that the Trustee wrongfully refused to permit him to intervene as a co-plaintiff in the North Carolina Lawsuit; and he weaves a conspiracy theory based on alleged connections with former Senator Jesse Helms and the U.S. Trustee's office, Mrs. Marm and the undersigned counsel's law firm.  The Debtor's conspiracy theory is absurd and, if nothing else, the Debtor's allegations establish a prima facie case justifying the Court's decision to convert the Debtor's bankruptcy case and justifying the Trustee's decision to oppose the Debtor's intervention in the North Carolina Lawsuit.

*Opposition of Phyllis Edmundson and Deborah Marm* (Dkt. No. 672), at 6.  I need not say more.[3]

### III

An order follows.

[Signed and dated above.]

Copies to: Debtor; recipients of e-notification of filings.

---

[3] Phyllis Edmundson and Deborah Marm's opposition to Yelverton's motion requests an award of sanctions.  However, that request does not comply with Fed. R. Bankr. P. 9011(c)(1) (requiring a motion and a 21-day safe harbor within which the offending paper may be withdrawn).  The request for sanctions will be denied.