The document below is hereby signed.

Signed: August 27, 2013



_S. Martin Teel, Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| STEPHEN THOMAS YELVERTON, | ) | Case No. 09-00414 |
| | ) | (Chapter 7) |
| Debtor. | ) | Not for publication in |
| | ) | West's Bankruptcy Reporter. |

MEMORANDUM DECISION RE DEBTOR'S MOTION
TO VACATE ORDER DENYING MOTION FOR RELIEF
FROM JUDGMENT PER FRCP RULE 60 (b)(3) and (4) and (d)(3)

By an order signed on August 7, 2013, and entered by the clerk on August 8, 2013, this court denied the *Motion for Relief From Judgment Per FRCP Rule 60(b)(3) and (4) and (d)(3)* filed by the debtor, Yelverton, who on August 22, 2013, filed a motion to vacate that order.  This latest motion will be denied.

I

First, Yelverton asserts that the court was wrong in treating his Rule 60 motion as not filed within a reasonable time.  Rule 60(c)(1) provides that "[a] motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding."  For reasons explained in

the *Memorandum Decision* entered on August 8, 2013, Yelverton did not act within a reasonable time as he could have raised his contentions at a much earlier stage, and has shown a lack of any diligence in pursuing those contentions.

Yelverton correctly observes that Rule 60(c)(1) is not applicable to Rule 60(d)(3), which preserves the court's power to "set aside a judgment for fraud on the court." However, "fraud on the court" under Rule 60(d)(3) is different from "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party" under Rule 60(b)(3), and because Yelverton's claims of fraud fall, if at all, under Rule 60(b)(3), not Rule 60(d)(3), they were required to be brought within a reasonable time. As noted in *Bowie v. Maddox*, 677 F. Supp.2d 276, 278 n.2 (D.D.C. 2010):

> Fraud on the court does not encompass "ordinary fraud," and thus must be distinguished from Rule 60(b)(3), which permits relief from judgment even for unintentional misrepresentations. [Citing 12 James Wm. Moore et al., Moore's Federal Practice § 60.43[1][a] (3d ed. 2009).] "[I]f fraud that may form basis of independent action 'is not kept within proper limits but is ballooned to include all or substantially all species of fraud within 60(b)(3) then the time limitation upon 60(b)(3) motions will be meaningless.'" *Geo. P. Reintjes Co. v. Riley Stoker Corp.*, 71 F.3d 44, 49 (1st Cir.1995) (quoting 7 Moore et al., Federal Practice ¶ 60.33 (1995)).

Yelverton cannot circumvent the requirement of bringing his motion within a reasonable time by labeling his motion one under Rule 60(d)(3) when the motion fits, if at all, under Rule 60(b)(3).

2

Yelverton's assertions of fraud do not amount to allegations of "fraud on the court" under Rule 60(d)(3). *See Baltia Air Lines, Inc. v. Transaction Mgmt., Inc.*, 98 F.3d 640, (D.C. Cir. 1996) ("Fraud on the court ... is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury." (Quoting *Bulloch v. United States*, 721 F.2d 713, 718 (10th Cir. 1983)).

Yelverton's motion under Rule 60 asserted two bases for "fraud upon the court":

> (1) "the claim by Edmundson/Marm of ownership by Atkinson of the 1,333.3 shares of stock in Yelverton Farms, Ltd., without his knowledge and consent, and with no intention to make him a beneficiary of this claim, constitutes a 'fraud' on the Bankruptcy Court by Edmundson/Marm, and a 'fraud' in the Settlement with the Trustee;" and

> (2) "[i]n being compromised by Marm and her Congressional colleagues to act in favor of Marm and against the Debtor Estate and Creditors, the Chapter 7 Trustee has committed a 'fraud' on the Bankruptcy Court."

These assertions do not rise to the level of "fraud on the court" as that term has been explained in *Baltia Air Lines, Inc.*, the controlling court of appeals decision in this circuit.  As explicated at greater length in *Montgomery v. Gotbaum*, 2013 WL

1088996, at *1 (D.D.C. Mar. 15, 2013):

> Relief due to "fraud on the court" is very rarely warranted, and the concept "is typically confined to the most egregious cases, such as bribery of a judge or a juror, or improper influence exerted on the court by an attorney, in which the integrity of the court and its ability to function impartially is directly impinged." *Great Coastal Express, Inc. v. Int'l Bhd. of Teamsters*, 675 F.2d 1349, 1356 (4th Cir. 1982). Even instances of "perjury or fabricated evidence are not grounds for relief as 'fraud on the court.'" *Id.* at 1357 (collecting cases).

As in *Montgomery v. Gotbaum*, none of the arguments advanced by Yelverton "even comes close to the realm of the more egregious forms of subversion of the legal process that would amount to fraud on the court." *Id.* (internal citations and quotations omitted). As noted in *Bowie v. Maddox*, 677 F. Supp.2d at 278-279:

> [T]he fraud must be egregious. "'Fraud upon the court' ... embrace[s] only that species of fraud which does or attempts to[ ] subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication, and relief should be denied in the absence of such conduct." *Synanon Church v. United States*, 579 F.Supp. 967, 974 (D.D.C. 1984) (quoting 7 Moore et al., Federal Practice ¶ 60.33 (1995)); *see also England v. Doyle*, 281 F.2d 304, 309 (9th Cir.1960) (fraud on the court requires "an unconscionable plan or scheme which is designed to improperly influence the court in its decision") (citing *Hazel–Atlas*, 322 U.S. 238, 64 S.Ct. 997). An "indispensable" element is that the fraud "prevented a party from presenting his case." *Reintjes*, 71 F.3d at 48 (citing *Chicago, R.I. & P. Ry. v. Callicotte*, 267 F. 799, 810 (8th Cir. 1920)).

In seeking Rule 60 relief, Yelverton has not alleged conduct that

sought fundamentally to undermine the judicial process or compromise the court's ability impartially to perform its adjudicatory role.  The allegations Yelverton relies upon in seeking Rule 60 relief simply do not amount to "fraud on the court," and as such, Yelverton cannot rely on Rule 60(d)(3) to avoid the time limitations imposed under Rule 60(c)(1).

II

Yelverton next contends that the court failed to address his argument that the court had abstained with respect to the determination of rights as between Yelverton and his former spouse regarding property ownership.  However, the court addressed the abstention argument at length in the August 8, 2013 decision, stating:

> <u>Argument that the Bankruptcy Court had "Abstained" From Jurisdiction</u>.  Yelverton argues that the Settlement Agreement is void because this court entered an order that allowed the Superior Court to enter a decree regarding the marital property rights between Yelverton and his former spouse.  As in the case of the first argument, this argument is silly because any property as to which the former spouse has a right of ownership that is superior to the rights of the bankruptcy estate would not be property of the estate, and would not have been reached by the Settlement Agreement.  In any event, on March 5, 2013, the Superior Court ruled against Yelverton's attempt to have any of his claims that became property of the bankruptcy estate decreed to be marital property in which his former spouse has an interest.

Mem. Dec. at 6 (Dkt. No. 681).  Yelverton's argument that the court failed to address the abstention issue is thus flatly in error.

III

Finally, Yelverton contends that the court made findings of fact regarding his assertions of fraud without taking evidence as to material facts that were in genuine dispute. Yelverton does not say what findings the court made, but the observations the court made were beyond dispute.

First, there could be no dispute that at the hearing to approve the settlement, the trustee testified that he entered into the settlement knowing that Yelverton, not Atkinson, owned the shares at issue, and that there was no longer any dispute in that regard. Accordingly, in entering into the settlement agreement, he could not have been misled by any earlier assertion by Marm and Edmundson that Atkinson owned the shares. Rule 60(b) relief was not appropriate when the record of the hearing to approve the settlement itself showed that the trustee was not settling on the basis of any assertion that Atkinson owned the shares.

Second, there could be no dispute that the United States Trustee appropriately sought to convert this case to chapter 7. As a debtor in possession, Yelverton mishandled the chapter 11 case and was unable to achieve a plan of reorganization. Seeking conversion of a chapter 11 case that was dead in the water was a sound decision on the part of the United States Trustee. More fundamentally, if conversion had *not* been warranted, Yelverton

would have prevailed in opposing the motion to convert on the merits.  The motivations of the United States Trustee in seeking conversion are irrelevant when conversion was, indeed, warranted on the merits and Yelverton was given a fair opportunity to show that conversion was unwarranted.  Besides, the conversion of the case occurred more than a year ago, and any effort to attack the conversion order under Rule 60(b)(3) is time barred by Rule 60(c)(1).

   Third, there could be no dispute that the chapter 7 trustee appropriately declined Yelverton's offer of assistance in litigating against Marm and Edmundson given Yelverton's history of advancing meritless positions in this case.  More fundamentally, the issue is whether the court ought to have approved the settlement of the litigation (not whether pressure was brought to bear on the trustee).  If the court ought to have disapproved the settlement on the basis that Yelverton was willing to handle the litigation against Marm and Edmundson at no expense to the estate, Yelverton could have raised that argument at the hearing on the motion to approve the settlement.  Yelverton did not raise that issue at the hearing on the motion to approve the settlement, and cannot use Rule 60(b) to raise the argument.  His speculation that, based on pressure from Marm, the trustee declined Yelverton's offer of assistance is beside the point: the issue is instead whether the court was correct in

7

approving the settlement. Besides, the court's decision to approve the settlement would not have been altered had Yelverton shown that pressure was brought to bear upon the trustee: given Yelverton's track record in the case, I would have rejected any argument that the settlement ought to be disapproved because Yelverton was willing to handle the litigation himself. For all of these reasons, Rule 60(b) relief would be inappropriate even if there had been pressure from "Marm and her Congressional colleagues" on the trustee. Accordingly, requiring an evidentiary inquiry into whether there was such pressure would be a waste.

                                IV

An order follows.

                                        [Signed and dated above.]

Copies to: Debtor; recipients of e-notification of filings.

8

R:\Common\TeelBW\BWC\Decisions\Yelverton\Yelverton - Memo Decsn re Mtn to Vacate Order Denying 2d Mtn to Vacate Order Approving Settlement_final.wpd