The document below is hereby signed.

Signed: January 3, 2014



_S. Martin Teel, Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                              )
                                   )
STEPHEN THOMAS YELVERTON,          )   Case No. 09-00414
                                   )   (Chapter 7)
                Debtor.            )   Not for publication in
                                   )   West's Bankruptcy Reporter.

MEMORANDUM DECISION RE _MOTION TO_
_ALTER OR AMEND DECISION PER RULE 59(e)_

The debtor Yelverton's _Motion to Alter or Amend Decision Per Rule 59(e)_ seeks to have the court vacate its decision disallowing his exemption asserted under § 522(d)(11)(E) of the Bankruptcy Code (11 U.S.C.).

I

Yelverton listed this exemption as follows:

Compensation for loss of future earnings from stock in Yelverton Farms, Ltd. of 1,333.3 shares. Count 1 in Case No. 5:09-cv-331 before the U.S. District Court for E.D. of North Carolina for liquidation of 1,333.3 shares of stock in Yelverton Farms, Ltd. pursuant to N.C. General Statutes 55-6-50(h), (i), (j), and (k). Yelverton Farms, Ltd. is a Subchapter S corporation, and thus distributions may be treated as earnings., a portion of the proceeds from the trustee's settlement of various litigation claims.

*See* Amended Schedule C (Dkt. No. 594).  As noted in the prior decision, the court approved a settlement of the North Carolina litigation that provides for the transfer of the debtor's stock in Yelverton Farms, Ltd., to his siblings and the mutual release of all claims against Yelverton Farms, Ltd. and Yelverton's siblings in consideration of a cash payment to the bankruptcy estate in the amount of $110,000.

In his *Motion*, Yelverton asserts that the prior decision is based on an erroneous premise that he seeks to exempt proceeds of the settlement; that he seeks to claim nothing from the proceeds of the settlement; and that he seeks instead "to claim 100% of the loss of future earnings from his 1,333.3 shares of stock in Yelverton Farms, Ltd."  However, any claim for loss of future earnings (if there *were* such a claim) necessarily would lie against Yelverton Farms, Ltd. and his siblings, and that claim has been released under the settlement.  As the prior decision explained at length, no part of the settlement proceeds is attributable to a claim for  "compensation of loss of future earnings" as that term is used in § 522(d)(11)(E).

                                II

Yelverton's *Motion* next asserts that there was a genuine dispute as to a material fact because he filed an affidavit establishing that he had been "receiving payment of earnings from Yelverton Farms, Ltd., for rendering personal services to the

2

corporation since 1994." *Motion* at ¶ 9.  However, as detailed in the prior decision, Yelverton never asserted a claim in the North Carolina litigation for loss of future earnings; and at the hearing on the motion to approve the settlement, he never indicated that he had a claim for loss of future earnings.  As observed in the prior decision:

> Yelverton does not say that he had any agreement with Yelverton Farms requiring Yelverton Farms to employ him.  *See* Debtor's Opp., Ex. 2.  Once Yelverton was ousted by the directors of Yelverton Farms in 2008, he was no longer employed by Yelverton Farms and he also had no right to be employed by Yelverton Farms.  Accordingly, as of the petition date, which was approximately one year after he was ousted, Yelverton Farms was not required to employ Yelverton.

*Memorandum Decision Re Cross-Motions for Summary Judgment ("Mem. Dec.")* (Dkt. No. 790) at 22.  Accordingly, the receipt of compensation for personal services prior to Yelverton's ouster does not create a genuine dispute as to a material fact.

                                III

Yelverton's *Motion* next contends that his affidavit and answers to interrogatories:

> raise <u>disputed</u> material questions of fact as to Yelverton's contractual relationship with Maxwell Foods, Inc., his relationship with Yelverton Farms, Ltd., and his relationship with its stockholders, and the <u>indirect</u> relationship between Maxwell Foods, Inc. and Yelverton Farms, Ltd.

*Motion* at ¶ 10 (underscoring in original).  As explained in the prior decision:

3

> The primary source of income for Yelverton Farms is a production contract with Maxwell Foods, Inc. (the "Production Contract"). *See Debtor's Motion for Summary Judgment* ("Debtor's Mtn.") at ¶ 4. The parties to the Production Contract are Yelverton, as the "Grower," and Maxwell Foods, Inc. *See* Tr. Mtn., Ex. 6 at 1. Nevertheless, payments under the Production Contract are to be made to Yelverton Farms, not Yelverton. *See id.* at 7-8 (handwritten note).

*Mem. Dec.* at 2. Yelverton cannot morph whatever rights he had under the Production Contract into a claim for loss of future earnings for personal services. Even though the Production Contract was the source of the income of Yelverton Farms, Ltd., the Production Contract did not confer on Yelverton a right to be employed by Yelverton Farms, and it had no value to him (other than indirectly via his status of being a shareholder) because payments were required to be made to Yelverton Farms, Ltd. Indeed, the trustee was not required by the other parties to the settlement to release to Yelverton Farms, Ltd., whatever rights Yelverton had under the Production Contract precisely because the Production Contract did not confer any rights on Yelverton:

> Amounts owed to Yelverton Farms under the Production Contract were paid to Yelverton Farms; and as to the future, Yelverton Farms was free to enter into a new production contract that would not be property of the estate. Therefore, as of the petition date (when whatever rights Yelverton had under the Production Contract became property of the estate) and ever since there was no value to the bankruptcy estate (standing in Yelverton's shoes) by reason of the Production Contract.

*Mem. Dec.* at 20-21.

4

IV

For all of these reasons, an order follows denying Yelverton's *Motion*.

[Signed and dated above.]

Copies to: Debtor; Recipients of e-notification of orders.