The document below is hereby signed.

Signed: August 12, 2015



_S. Martin Teel, Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| STEPHEN THOMAS YELVERTON, | ) | Case No. 09-00414 |
| | ) | (Chapter 7) |
| Debtor. | ) | **Not for publication in** |
| | ) | **West's Bankruptcy Reporter.** |

### MEMORANDUM DECISION SETTING FORTH PRELIMINARY VIEWS
### RE MOTION TO COMPEL TRUSTEE TO ABANDON PROPERTY AND CLAIMS

The debtor, Stephen Thomas Yelverton, has filed a _Motion to Compel Trustee to Abandon Property and Claims_ (Dkt. No. 846). Specifically, he seeks pursuant to the Bankruptcy Code (11 U.S.C.) to have the court compel the Chapter 7 trustee, Wendell W. Webster, to abandon to him "any legal or equitable interests or claims that the Trustee has or may have in any Production Contract or any agreement with Goldsboro Hog Farms, Inc., or with Maxwell Foods, Inc., which is its parent corporation, or any other related or affiliated entity." Webster and Yelverton Farms, Ltd., have objected to the _Motion_. This sets forth my preliminary view of the issues in advance of a hearing, and the parties should be prepared to address those views at the hearing on the _Motion_.

I

Yelverton's sisters are Phyllis Edmundson and Deborah Marm. Together with Phyllis Edmundson's husband, they were the majority shareholders of Yelverton Farms, Ltd., a company engaged in a pig raising business in North Carolina.  Yelverton was a minority shareholder and he sued the majority shareholders, asserting claims he had as a minority shareholder.  Pursuant to a *Settlement Agreement*, executed on March 25, 2012 (between Webster, on the one side, and, on the other side, Yelverton Farms, Ltd., Yelverton's two sisters, and their spouses) Webster released all such claims, and transferred Yelverton's shares in the company to the other parties to the *Settlement Agreement*.

As a producer of pigs, Yelverton Farms, Ltd., has obtained, and apparently continues to obtain, income under a Production Contract that was entered into, prior to the commencement of this bankruptcy case, between Yelverton and Maxwell Foods, Inc., but that specifies that payments are to be made to Yelverton Farms, Ltd., not to Yelverton.  Whatever rights, if any, that Yelverton had by reason of the Production Contract became property of the estate upon the commencement of this bankruptcy case.  The *Settlement Agreement* did not provide for Webster to convey the Production Contract to Yelverton Farms, Ltd.

II

At the outset there are two problems with the *Motion*.

2

First, Yelverton's schedules listed "Production contract with

Maxwell Foods, Inc. dated April 1997" and did not list any other

agreement with any of the specified entities.  Accordingly, the

*Motion* must be denied with respect to such unlisted contracts or

entities.  The trustee and creditors are entitled to an accurate

scheduling of assets owned by the debtor on the petition date, so

that the trustee can evaluate whether it makes sense to liquidate

the asset.

Second, Yelverton seeks abandonment of unspecified "claims

in" the Production Contract.  Whatever he may mean by referring

to claims *in* the Production Contract, he did not list any such

claims.  There may exist claims *under* the Production Contract,

but ownership of the Production Contract gives the owner the

right to pursue any existing claims under the Production Contract

that have not been assigned to or vested in anyone else.[1]  It was

---

[1]  It is doubtful that there *are* any "claims under" the
Production Contract held by the estate at this time.  The
Production Contract provides that payments are to be made to
Yelverton Farms, Ltd.  *See* Dkt. No. 546 at 47-49.  Abandonment
will not undo the propriety of Yelverton Farms, Ltd., having
received those payments, even if Yelverton takes steps to have
Maxwell Foods, Inc., agree to an amendment of the Production
Contract to require that payments be made to him.  Although
abandonment sometimes has a retroactive effect, there is no
reason to think that abandonment will somehow retroactively
extinguish Yelverton Farms, Ltd.'s right to have received the
payments.  As noted in *Yelverton v. D.C. Dept. of Pub. Works*,
2015 WL 3637440, at *12 (Bankr. D.D.C. June 10, 2015), "the
retroactive effect of abandonment of a property does not roll
back the clock to undo . . . consequences adverse to the debtor
that have arisen prior to abandonment regarding that property."
(Citations omitted.)

not necessary for Yelverton to seek abandonment of "claims under" the Production Contract arising after he became or becomes the owner of the Production Contract.  Stated another way, if Yelverton becomes the owner of the Production Contract via an abandonment of the same, he can exercise any rights that he has as owner of the Production Contract, and that would include any claims he has under the Production Contract as its owner (if there are any such claims), but not any claims that became property of the bankruptcy estate and that arose before Yelverton became or becomes the owner of the Production Contract.[2]

I thus will address only whether the Production Contract with Maxwell Foods, Inc., should be abandoned.

---

[2]  Yelverton argues that executory contracts do not vest in the Chapter 7 Trustee as of the date of the filing of the bankruptcy petition, but only upon the Trustee's timely and affirmative act of assumption of the contract (which is not rejecting it), citing *In re Ortiz*, 400 B.R. 755, 763 (C.D. Cal. 2009).  But *Ortiz* relied upon a Bankruptcy Act case, and the better view is that until rejected the executory contract *is* property of the estate.

Even if the estate had claims under the Production Contract against Yelverton Farms, Ltd., Yelverton's sisters, and their spouses, they may have been released pursuant to a Settlement Agreement executed in March 2012 whereby Webster released claims (against those entities):

> presently existing or existing hereafter, which the [Chapter 7 Bankruptcy Estate] now has or . . . shall hereafter have . . . related to or arising out of any matters raised, or which could or might have been raised, in [litigation Yelverton commenced against the released parties] [or] the Bankruptcy Case . . . .

4

II

Pursuant to 11 U.S.C. § 554(b), on request of a party in interest and after notice and a hearing, "the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  Since Webster and Yelverton Farms, Ltd., raise no arguments that show that the Production Contract is *not* "burdensome to the estate" or that it is *not* "of inconsequential value and benefit to the estate," their arguments have not squarely addressed that issue.

A.

Yelverton Farms, Ltd., argues that it, and not Yelverton, is the party that performs all of the obligations under the Production Contract and to which payments are made under the Production Contract, and thus the Production Contract had been effectively entered into on behalf of, or assigned to, Yelverton Farms, Ltd.  Accordingly, it argues that if the court orders Webster to abandon the Production Contract, the court ought to order that the Trustee abandon it to Yelverton Farms, Ltd., and not to Yelverton.  However, an abandonment simply abandons a property from the estate, and if I order an abandonment of the Production Contract that will simply terminate any interest the estate may have had in the Production Contract, without determining who has an ownership interest in the Production

5

Contract.

In other words, I can leave it to Yelverton and Yelverton Farms, Ltd., to squabble over who has rights under the Production Contract. If I order an abandonment, it will be only of whatever ownership interest the estate has in the Production Contract as successor to Yelverton's interests in the Production Contract, and my order will reflect that there is no adjudication of the ownership dispute.[3]

B.

Yelverton Farms, Ltd., argues that if the Production Contract was an estate asset, then the *Motion* should still be denied because the Bankruptcy Code does not permit executory contracts to be abandoned to a debtor. *See Szilagyi v. Greenblatt (In re Res. Tech. Corp.)*, 430 F.3d 884, 887 (7th Cir. 2006). It notes that the Bankruptcy Code provides for executory contracts to be assumed or rejected, but not abandoned. *Id.* It

_____

[3] Even though payment rights under the Production Contract may belong to Yelverton Farms, Ltd., that may not be the end of the matter. As a party signing the Production Contract, Yelverton arguably had the right to terminate the Production Contract, and upon abandonment that right alone may have value to him: he may be able to extract something from Yelverton Farms, Ltd. (for example, in exchange for *not* terminating the Production Contract, because it would require effort for Yelverton Farms, Ltd. to negotiate a new production contract with Maxwell Foods, Inc.) I suspect that is why Yelverton Farms, Ltd., seeks to have the court order that the Production Contract is abandoned to it instead of to Yelverton who (if the Production Contract is abandoned to him) might engage in what Yelverton Farms, Ltd., views as mischief.

6

further notes that if the Production Contract were an executory contract, then it was automatically rejected by operation of law 60 days after Yelverton's bankruptcy case was converted to a case under Chapter 7.  *See* 11 U.S.C. § 365(d)(1).[4]  From this it argues that even if the court ordered Webster to abandon the Production Contract, there is no interest to be abandoned to Yelverton.  Yelverton responds, correctly, that rejection does not terminate an executory contract, and the effect of abandonment is that the bankruptcy estate is no longer a party to the executory contract, citing *In re Morrow*, 462 B.R. 364, 372 (Bankr. D. Mass. 2012); *In re Ortiz*, 400 B.R. 755, 762 (C.D. Cal. 2009); *In re Park*, 275 B.R. 253, 256 (Bankr. E.D. Va. 2002); *In re Knight*, 8 B.R. 925, 929 (Bankr. D. Md. 1981).  Yelverton argues correctly that where an executory contract is deemed rejected by a Chapter 7 trustee, the rejection is tantamount to

---

[4]  Section 365(d)(1) provides:

In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected.

an abandonment, with the contract vesting in the debtor.[5]  I need
not decide whether the estate's interest in the Production
Contract was an executory contract.  If the estate's interest in
the Production Contract was *not* an executory contract, then it
would currently be an asset of the estate that could be
abandoned, unless the trustee elects to try to sell it.  If it
*was* an executory contract, the rejection already effected an
abandonment.  All I need to rule regarding whatever interest of
Yelverton to which the estate succeeded by reason of the
Production Contract is that:

- if that interest (or at least part of it) is *not* an
  executory contract, it is abandoned unless it is not
  "burdensome to the estate" and is not "of
  inconsequential value and benefit to the estate;" or

- if that interest (or part of it) *is* an executory
  contract, it (or the part that is an executory
  contract) is deemed to have been abandoned.

C.

Although Yelverton Farms, Ltd., agrees that the Production

---

[5]  In support of this argument, Yelverton cites *In re Rodall*, 165 B.R. 506, 508 (Bankr. M.D. Fla. 1994); *In re Hobbs*, 221 B.R. 892, 894 (Bankr. M.D. Fla. 1997); *In re Stolz*, 315 F.3d 80, 86, n.1 (2nd Cir. 2002); *In re The Ground Round*, 335 B.R. 253, 262 (1st Cir. BAP 2005); *In re Continental Airlines*, 981 F.2d 1450, 1459 (5th Cir. 1993); *In re Murphy*, 694 F.2d 172, 174 (8th Cir. 1982); *In re Onecast Media, Inc.*, 439 F.3d 558, 563 (9th Cir. 2006);  3 Collier on Bankruptcy, Section 365.09, at 365-74 (15th Ed. Rev. 2000).

Contract has no value, Yelverton Farms, Ltd., notes that on July 8, 2015, Yelverton filed with the United States Court of Appeals for the District of Columbia Circuit a pleading entitled "Appellant's Motion for Leave to Remand to the Bankruptcy Court in View of It Re-Opening the Settlement Agreement" in which he stated "[t]he Production Contract has a value of at least $1.2 million."  However, that is likely the value of the proceeds of the Production Contract which were designated to be paid to Yelverton Farms, Ltd.

The Production Contract's designation of Yelverton as the grower gives Yelverton no apparent right to the proceeds received from Maxwell Foods, Inc., as the Production Contract directs Maxwell Foods, Inc., to pay Yelverton Farms, Ltd., any amounts owed under the Production Contract.  Yelverton's interest, to which the estate succeeded, appears to be worthless except, apparently, for the value of what Yelverton, as the designated grower, could extract from Yelverton Farms, Ltd., for not terminating the Production Contract (or for not stirring up trouble by asserting to Maxwell Foods, Inc., that he is entitled to the proceeds or to amend the Production Contract to designate himself to be the recipient of proceeds).

Webster has agreed with Yelverton Farms, Ltd., that the right to proceeds for pigs grown under the Production Contract and payable by Maxwell Farms, Inc., have no value to the estate

9

as those proceeds are payable to Yelverton Farms, Ltd., not
Yelverton.  He also agrees with Yelverton Farms, Ltd., that the
Production Contract is an executory contract.  That may (or may
not) be true with respect to the obligations owed to and by
Maxwell Farms, Inc., under the Production Contract, but the
obligations owed by Maxwell Farms, Inc., under the Production
Contract may not be property of the estate because those
obligations are owed to Yelverton Farms, Ltd., not Yelverton.
The only apparent value to the estate is Yelverton's possible
ability as the designated grower to terminate the Production
Contract or to stir up trouble by asserting to Maxwell Foods,
Inc. that he is entitled to the proceeds or to amend the
Production Contract to designate himself to be the recipient of
proceeds, and to extract something from Yelverton Farms, Ltd., in
exchange for not exercising those rights.  Webster has not
addressed whether he views that value as worth preserving for the
benefit of the estate.

    If the Production Contract, or more precisely, the estate's
limited interest in the Production Contract pursuant to Yelverton
being the designated grower (but not the party entitled to
receive proceeds from the pig sales):

- is worth something (because of the threat of
  termination and amendment of the Production Contract by
  the estate as the successor to Yelverton's rights as

the designated grower); and

- that limited interest in the Production Contract is *not* an executory contract,

then Webster needs to address whether he asserts that the value is of inconsequential value or benefit to the estate or that the rights of the estate are burdensome to the estate. It is strange to think that the parties would all view the estate's rights by virtue of the Production Contract as worth nothing and yet devote as much effort as they have to the *Motion.*

D.

Yelverton has filed a later motion to dismiss his *Motion* for lack of subject matter jurisdiction and as moot. He agrees that the Production Contract was an executory contract and, thus, he observes, the Production Contract has been abandoned to him by way of rejection of the executory contract through the trustee's failure timely to seek to assume the executory contract. He thus argues that his *Motion* seeking abandonment is moot, and that the court lacks subject matter jurisdiction to address the issue. On the latter point he argues:

> With the Production Contract no longer property of the Estate in view of the "deemed rejection" under 11 U.S.C. 365 (d)(l) by the Chapter 7 Trustee in October 2010, the Bankruptcy Court no longer has jurisdiction over it. *In Re Ostroff*, 433 B.R. 442, 449 (Bkrtcy. D.D.C. 2010).

However, as discussed above, the abandonment motion is overly broad, and there remains the issue of whether the court should

11

compel abandonment of whatever interest, if any, the estate still holds by virtue of the Production Contract. If that interest is worthless or burdensome to the estate, the court can compel abandonment, but otherwise the court ought not compel abandonment.

Yelverton appears to seek to have this court declare that the Production Contract in its entirety was an executory contract, and to declare that all rights under the Production Contract are treated as his as of the date of abandonment via rejection of the Production Contract. I decline that invitation. This matter can be disposed of without reaching that issue, and it would be a waste of judicial resources to address that difficult issue when there is a far simpler approach to decide Yelverton's *Motion*. It is advisable to decide the issue of abandonment of whatever rights, if any, that the estate still has by reason the Production Contract, and leave any dispute regarding the executory contract issue to a fight between Yelverton and Yelverton Farms, Ltd., in another forum. It does not appear that adjudicating that issue would have any impact on the administration of the estate. So at least as to that issue, I agree with Yelverton that there is no reason to exercise jurisdiction.

[Signed and dated above.]

Copies to: Debtor; recipients of e-notification of filings.

12