The document below is hereby signed.

Signed: August 28, 2015



_S. Martin Teel, Jr._
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| STEPHEN THOMAS YELVERTON, | ) | Case No. 09-00414 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| | ) | **Not for Publication in** |
| | ) | **West's Bankruptcy Reporter.** |

MEMORANDUM DECISION DISMISSING
REQUEST FOR JUDICIAL NOTICE OF COMMON LAW
<u>EQUITABLE LIEN IN FAVOR OF ALEXANDRA NICOLE SENYI de NAGY-UNYOM</u>

The debtor, Stephen Thomas Yelverton, has filed a *Request for Judicial Notice of Common Law Equitable Lien in Favor of Alexandra Nicole Senyi de Nagy Unyom* (Dkt. No. 883), in which he:

> requests Judicial Notice by the Bankruptcy Court that Alexandra Nicole Senyi de Nagy-Unyom holds, since April 2, 2008, a Common Law "equitable lien" on the 1,333.3 shares of stock in Yelverton Farms, Ltd., which was included in the Settlement Agreement by the Chapter 7 Trustee with various <u>non</u>-Creditors, executed March 25, 2012, and <u>not</u> yet consummated.

(Emphasis in the original.) Yelverton bases this on his execution on April 2, 2008, of a promissory note in favor of Ms. Senyi to pay her the first $100,000, from the sale of his 1,333.3 shares of stock in Yelverton Farms, Ltd. The *Request* addresses

an alleged equitable lien on the shares but also inconsistently refers to an alleged equitable lien on the proceeds from a future sale of the share. Regardless of whether Yelverton's argument relates to an equitable lien on the shares or the proceeds of the shares, I will dismiss the *Request*.

I

Yelverton identifies no contested matter or adversary proceeding pending in this Court in which he seeks to have the court take judicial notice of Senyi holding such equitable lien. In addition, the matter of which it is requested to take judicial notice (Senyi's holding an equitable lien) is not a fact of which it is appropriate to take judicial notice under Fed. R. Evid. 201 but is a legal issue that is subject to dispute.

If Yelverton is seeking a determination that Senyi holds an equitable lien on the shares, and if he has standing to seek such a determination (which is doubtful), he must file a complaint commencing an adversary proceeding because Rule 7001(2) of the Federal Rules of Bankruptcy Procedure provides, with an exception of no relevance here, that "a proceeding to determine the validity, priority, or extent of a lien or other interest in property" is an adversary proceeding. Moreover, pursuant to a prior order of the District Court, *Yelverton v. Webster (In re Yelverton)*, Case No. 1:13-cv-1544 (CRC), 526 B.R. 429, 435 (D.D.C. Aug. 6, 2014) the District Court barred Yelverton from

filing any further civil action in the District Court without having first obtained leave of the District Court to file the civil action.  Yelverton must obtain permission before pursuing such an adversary proceeding complaint in this court as a unit of the District Court exercising the District Court's bankruptcy subject matter jurisdiction by way of a referral of such civil actions to this court.  For the reasons that follow, it is unlikely that he would be granted such permission.

II

Yelverton lacks standing to assert Senyi's alleged equitable lien.  *See In re Yelverton*, Case No. 09-00414, 2014 WL 36585, at *2 (Bankr. D.D.C. Jan. 6, 2014).

III

To the extent that Yelverton's *Request* is one to declare that an equitable lien exists on the shares themselves and not on any existing or eventual proceeds of the shares, and if the shares have become non-estate property pursuant to the settlement calling for the trustee to transfer the shares to others, Yelverton has not shown how a proceeding to determine whether an equitable lien exists on the shares falls within this court's subject matter jurisdiction under 28 U.S.C. § 1334(b).  Any lien on such non-estate property would not have any apparent impact on the administration of the estate.

IV

On the merits, Yelverton's contentions are frivolous. Yelverton is mistaken in arguing that this court "has <u>never</u> made any rulings with respect to this Promissory Note and the Common Law 'equitable lien' in favor of Ms. Senyi, where it is a matter of state law and where the Bankruptcy Court has no Constitutional authority under Article III to make such a ruling." (*Request*, p. 2; emphasis in original.)  Yelverton fails to take account of prior rulings of this court concerning Senyi's rights relating to the shares.  This court already decided that Senyi has no ownership interest in the shares themselves based on the promissory note.  *See In re Yelverton*, 477 B.R. 282, 287 (Bankr. D.D.C. 2012).  The promissory note promised to pay Senyi the proceeds of a sale of the shares, not to convey to her the shares themselves.  Accordingly, even if an equitable lien existed, it

would be on the proceeds of the shares.[1]  However, in that regard, in *In re Yelverton*, Case No. 09-00414, 2014 WL 36585, at *2-3 (Bankr. D.D.C. Jan. 6, 2014), I previously rejected the argument by Yelverton that an equitable lien existed on the proceeds of the shares by observing:

> Moreover, on the merits, the existence of an equitable lien must be tested as of the petition date in 2009, not as of September 2010.  Under 11 U.S.C. § 544(a)(1), the trustee enjoys the rights of a hypothetical judgment lien creditor as of the date of the commencement of the bankruptcy case. . . .
>
> The trustee's hypothetical judicial lien is superior to any other interest that is unperfected on the petition

---

[1] Any judgment holding that no equitable lien existed is now binding on Yelverton as a matter of *res judicata* even if the court lacked authority to decide the issue.  Moreover, determining whether Senyi held an equitable lien on the shares or on the proceeds of the shares was necessarily a core proceeding and one that the bankruptcy court was authorized to decide, without violating Article III of the Constitution.  Under the Bankruptcy Act of 1898, a bankruptcy referee could exercise summary jurisdiction over property in the debtor's possession as long as no third party asserted a "substantial adverse" claim. *Taubel-Scott-Kitzmiller Co. v. Fox*, 264 U.S. 426, 431–433 (1924). The result ought not be different under the jurisdictional provisions relating to the Bankruptcy Code (in which Congress intended to confer as much authority on bankruptcy judges as was consistent with Article III of the Constitution).  Here, the existence of § 544, which plainly defeats any equitable lien that Senyi might have had against the shares or the proceeds of the shares, rendered any such claim by Senyi a "merely colorable" claim that, under *Mueller v. Nugent*, 184 U.S. 1, 15 (1902), and *Taubel-Scott-Kitzmiller Co.*, the bankruptcy judge could hear without violating Article III of the Constitution.  *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1952-54 (2015) (Roberts, C.J., dissenting, and addressing an issue not reached by the majority).  Now, however, the shares are no longer estate property, and accordingly, determining whether an equitable lien exists would have no apparent effect on the administration of the estate.

date. *Union Planters Bank, N.A. v. Burns (In re Gaylord Grain, LLC)*, 306 B.R. 624, 630 (B.A.P. 8th Cir. 2004). Yelverton's *Motion* fails to articulate any basis upon which Senyi's alleged equitable lien was perfected against a hypothetical judgment lien creditor as of the petition date. A hypothetical judgment lien creditor would not have had any notice of Senyi's alleged equitable lien as of the petition date of May 14, 2009, and thus that equitable lien could not defeat the trustee's hypothetical judicial lien.

                                    V

A separate order follows dismissing Yelverton's *Request for Judicial Notice of Common Law Equitable Lien in Favor of Alexandra Nicole Senyi de Nagy Unyom* (Dkt. No. 883).

                                          [Signed and dated above.]

Copies to: Debtor; recipients of e-notification of filings.