The document below is hereby signed.

Signed: August 24, 2016



_S. Martin Teel, Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| STEPHEN THOMAS YELVERTON, | ) | Case No. 09-00414 |
| | ) | (Chapter 7) |
| Debtor. | ) | Not for publication in |
| | ) | West's Bankruptcy Reporter. |

MEMORANDUM DECISION RE APPLICATIONS FOR ALLOWANCE
AND PAYMENT OF CHAPTER 7 ADMINISTRATIVE EXPENSE CLAIMS

Over the objections of the debtor, Stephen Thomas Yelverton, the court has allowed the application of the trustee, Wendell W. Webster, for compensation in the form of a commission; the application of Webster's law firm (Webster, Webster, Fredrickson, Correia & Puth, PLLC) for fees and reimbursement of expenses; and the application of Ronald Gibson, Webster's special counsel, for fees. The issues remaining are (1) whether the court should treat the applications as final applications, and (2) whether, to the extent that the applications are treated as only interim applications, the court should authorize the trustee to pay the allowed claims now. I will treat the order allowing Gibson's application as allowing a final application but will treat the

orders allowing the other two applications as allowing interim applications.  I will authorize payment, on a pro rata basis, of all three allowances pursuant to 11 U.S.C. § 331.

I

The court is treating the order allowing Gibson's administrative expense claim as the allowance of a final application because he will not be performing additional services in the case, and his application was a final application. The court is treating the order allowing Gibson's administrative expense claim as the allowance of a final application.  However, the payment on that claim will remain subject to adjustment (including possible disgorgement) in the event that there is an alteration of the amount of other allowed administrative expense claims (for example, if Webster's law firm is granted additional compensation).

II

At the hearing on Webster's and Webster's law firm's applications, which were titled interim applications, Webster requested that the court treat those applications as final applications.  The probable reason for that request was so that it would be appropriate for the court to direct payment of all three administrative expense claims as claims allowed pursuant to final applications by the only three affected administrative claimants in the case.  Webster and his law firm were consenting

to a pro rata distribution now on the allowed chapter 7 administrative expense claims even though Webster may incur additional attorney's fees in the case.

Ordinarily, the awards of such administrative expenses are made final orders incident to a trustee filing a final report and account.  Webster and his law firm did not give creditors and the United States Trustee notice of their request to make their applications final applications.  Creditors and the United States Trustee theoretically may have refrained from objecting to allowance of the administrative expense claims until Webster and his law firm filed final applications, at which time the requested awards could be evaluated in the context of completed work on the case.  Accordingly, I will treat the applications of Webster and his law firm as interim applications.

However, if Webster and his law firm were to request for their applications to be treated as final applications, there appears to be no reason for the court to deny their requests. For reasons discussed in another decision of this date allowing Gibson's application, all three administrative expense claims enjoy a first priority under 11 U.S.C. § 507(a)(1)(C), even over the potential chapter 7 tax claim in this case.  The estate consists of $98,800.  Webster received $110,000 pursuant to a settlement with Yelverton's siblings, but Yelverton had an allowed exemption claim of $11,200.  There are no other assets to

3

administer, and the only distributions in the case will be on the three allowed administrative expense claims as they exceed the funds Webster holds.  Accordingly, Webster and his law firm are free to file applications to make their allowed applications final applications.[1]  However, the apparent impetus for their doing so is probably no longer present because, as discussed in part IV, I will allow the three allowed administrative expense claims to be paid on a pro rata basis, without requiring Webster's and his law firm's applications to be final applications.

                               III

I elaborate on one point regarding the allowance of Webster's and his law firm's applications.  Even if Webster files a final report, the case itself will remain open because Yelverton sued Webster and the surety on his trustee's bond, Federal Insurance Company, in *United States ex rel. Yelverton v. Webster, et al.,* Adversary Proceeding No. 14-10014, seeking damages for an alleged breach of fiduciary duty.  This court

---

[1] Webster's law firm remains free to change its mind and be content to let its application remain only as an interim application.  It may have anticipated that this court's dismissal of the adversary proceeding against Webster and his surety would be affirmed on appeal, and may not have taken into account the probable necessity, which arose only after the hearing on its application was held, of incurring additional attorney's fees defending the appeal.  In the event it were allowed additional fees, the law firm could move for an order directing disgorgement of payments on the other allowed administrative expenses to the extent necessary to assure a pro rata distribution.

                                4

dismissed Yelverton's claims in the adversary proceeding because they were barred by claim and issue preclusion doctrines, and for failure to state a claim upon which relief could be granted.[2] On December 23, 2014, Yelverton filed a notice of appeal from the Bankruptcy Court's rulings in the adversary proceeding, the appeal was assigned Case No. 1:14-cv-02209 in the District Court, and it currently remains pending.[3]

Yelverton objected to Webster's and Webster's law firm's applications for allowance of administrative expense claims, arguing, *inter alia*, that the court cannot act on the applications until the appeal is decided. However, I overruled that objection because I was (as I now remain) firmly convinced that Yelverton's claims in the adversary proceeding lack merit on their face. Under 28 U.S.C. § 157(b), Webster's and his law firm's applications for allowance of administrative expense claims were plainly core proceedings that this court could

---

[2] *See In re Yelverton*, 2014 WL 4840444 (Bankr. D.D.C. Sept. 25, 2014) (Dkt. No. 84); *In re Yelverton*, 2014 WL 6980507 (Bankr. D.D.C. Dec. 9, 2014) (Dkt. No. 99).

[3] On March 3, 2015, the District Court struck that appeal because Yelverton had not sought leave to file an appeal. Yelverton appealed to the Court of Appeals, Case No. 15-7047. On August 5, 2016, the Court of Appeals reversed the striking of the appeal, ruling that leave to appeal had *not* been required. *See United States ex rel. Yelverton v. Federal Insurance Company*, 2016 WL 4151238, at *2-3 (D.C. Cir. Aug. 5, 2016). Stating that it lacked sufficient information to decide the appeal on the merits, the Court of Appeals remanded the case to the District Court. *Id.* at *3.

decide; therefore, they are subject to review only by way of appeal under 28 U.S.C. § 158--not via objections to proposed findings of fact and conclusions of law under 28 U.S.C. § 157(c)(1), which only relates to non-core proceedings.  Thus, in granting Webster's and his law firm's applications, this court had authority to rely on its assessment that the adversary proceeding initiated by Yelverton lacks merit, even if Yelverton may argue that the adversary proceeding itself is a proceeding that only the District Court can decide.[4]  Accordingly, Webster and his law firm are entitled to the allowance of their administrative expense claims despite the pending District Court appeal of this court's dismissal of Yelverton's adversary proceeding.

In any event, even if Yelverton prevails against Webster in the adversary proceeding through his appeal to the District Court, that could impact only the propriety of this court having allowed Webster a commission.  Webster's law firm (a separate

---

[4] In the pending District Court appeal, it is an academic issue whether only the District Court can decide the adversary proceeding.  Whichever way the District Court rules on that issue, it will not alter the outcome. An affirmance of the Bankruptcy Court's rulings in the adversary proceeding will be the equivalent of a judgment of dismissal issued by the District Court itself as the rulings of the Bankruptcy Court were subject to de novo review in the District Court, even on an appeal, as turning solely on questions of law.  *See Executive Benefits Ins. Agency v. Arkison*, 134 S.Ct. 2165, 2168 (2014).  And a reversal would have the same impact even if ultimately the adversary proceeding can only be decided in the District Court.

entity from Webster) is not a defendant in the adversary proceeding and a disallowance of Webster's $8,190 commission would not affect the allowance of Webster's law firm's claim for attorney's fees.  The law firm's allowed administrative claim (for compensation of $120,323.50 and reimbursement of actual, necessary expenses in the amount of $10,079.88) will exhaust the estate's remaining $98,800 in funds even if Webster's commission is disallowed.[5]  For reasons discussed in another decision of this date, Yelverton lacks standing to object to Gibson's application.  For the same reasons, Yelverton lacks standing to object to Webster's application for a commission because the law firm's allowed administrative expense claim alone would exhaust the estate.  As holders of allowed administrative expense claims exceeding the estate's funds, Webster's law firm and Gibson are the only parties that would be adversely affected by the allowance of Webster's application for a commission, and thus they are the only entities with standing to object to Webster's application for a commission.  Neither the law firm nor Gibson has objected to Webster's application for a commission.

IV

---

[5]  An examination of the law firm's billing statement suggests that its allowed fees and expenses exceed $98,800 even if the fees and expenses incurred in representing Webster in the adversary proceeding, the appeal to the District Court (Case No. 1:14-cv-02209), and the appeal to the Court of Appeals (Case No. 15-7047) are disregarded.

Even though I am treating two of the applications for administrative expense claims as only interim applications, I will authorize Webster to pay the three allowed chapter 7 administrative expense claims now on a pro rata basis.  Webster and his law firm consent to such an interim distribution on the three allowed chapter 7 administrative expense claims.  The only additional chapter 7 administrative expense claims of a § 507(a)(1)(C) priority that may arise in this case are additional fees and expenses that may be incurred by Webster's law firm.  Webster's law firm does not object to the court's ordering a pro rata distinction now based on the three existing allowed chapter 7 administrative expense claims.

The estate stands at $98,800 after subtracting Yelverton's allowed exemptions, and is far short of being sufficient to pay these three allowed chapter 7 administrative expense claims. Yelverton's litigiousness, often involving claims of a frivolous nature, has substantially drawn out the resolution of this case.  It is extraordinary for a trustee and his lawyers to have been deprived of compensation for many years, as has occurred here, and the blame for the delay rests substantially on Yelverton.

Given the long delay, this is an appropriate case in which to order interim compensation under 11 U.S.C. § 331.  "The essential purpose of [§ 331] is to relieve counsel and other professionals of the burden of 'financing' lengthy bankruptcy

proceedings." *In re Commercial Consortium of California*, 135 B.R. 120, 123 (Bankr. C.D. Cal. 1991) (citations omitted).  Only Yelverton objected to the three applications.  Yelverton's objections to Webster's and Webster's law firm's applications were without merit, and the court has found that Yelverton lacks standing to object to Gibson's application.  There is no realistic likelihood of success if Yelverton appeals the allowance of the claims (whether via an appeal of the allowance of the claims on an interim basis or via an appeal when the claims are allowed as final applications or part of final applications).  Because the distributions are on an interim basis, they remain subject to revision if the allowed amounts of administrative expense claims change.  *See In re Gherman*, 114 B.R. 305, 307 (Bankr. S.D. Fla. 1990).  *See also In re Lockwood Corp.*, 216 B.R. 628, 635 (Bankr. D. Neb. 1997).

V

An order follows that directs that (1) the application of Ronald Gibson, the trustee's special counsel, is treated as a final application, but payments pursuant to the allowance of that application remain subject to disgorgement if there are changes in the allowed amounts of administrative expense claims; (2) the applications of the trustee, Wendell W. Webster, and his law firm, Webster, Fredrickson, Correia & Puth, PLLC, are treated as interim applications, and the request to make them final

9

applications is denied without prejudice; and (3) the trustee, Wendell W. Webster, is authorized and directed to make payments, on a pro rata basis, on the three allowed chapter 7 administrative expense claims (of Webster; his law firm, Webster, Fredrickson, Correia & Puth, PLLC; and Ronald Gibson), but such payments remain subject to adjustment or disgorgement if there are changes in the allowed amounts of administrative expense claims.

[Signed and dated above.]

Copies to: Debtor; recipients of e-notification of filings.